# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**'08 - CV - 02806**

Civil Action No.

(To be supplied by the court)

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC 2 9 2008

GREGORY C. LANGHAM
CLERK

_Solomon Ben-Tov_ COHEN _pro-se_ , Plaintiff,

v.

RECEIVED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC 22 2008

GREGORY C. LANGHAM
CLERK

STEVE HODGES, INSPECTOR
US POSTAL SERVICE,

JOHN E FULLER, INSPECTOR
US POSTAL SERVICE,

E QUINTANA, POLICE OFFICER,
DENVER POLICE DEPARTMENT

KENT PROSE, INVESTIGATOR
DENVER DISTRICT ATTORNEY'S OFFICE

MITCHELL R MORRISSEY, DISTRICT ATTORNEY
2nd JUDICIAL DISTRICT, STATE OF COLORADO

KANDACE GERDES, DEPUTY DISTRICT ATTORNEY
2nd JUDICIAL DISTRICT,

JOSEPH M MORALES, CHIEF DEPUTY DISTRICT ATTORNEY
2nd JUDICIAL DISTRICT

STATE OF COLORADO , Defendant(s).

(List each named defendant on a separate line.)

## PRISONER COMPLAINT

(Rev. 1/30/07)

## A. PARTIES

ALIEN #77309675

1. SOLOMON BEN-TOV COHEN pro-se, INMATE ID L2580
(Plaintiff's name, prisoner identification number, and complete mailing address)
AURORA/ICE PROCESSING CENTER, 11901 E 30H AVE, AURORA
Tel: (303) 361-6612                    CO 80010-1525

2. STEVE HODGES, INSPECTOR, US POSTAL SERVICE
(Name, title, and address of first defendant)
1745 STOUT ST, SUITE 900 DENVER, CO 80299
At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? ___ Yes ✓ No (CHECK ONE). Briefly explain your answer:

FEDERAL AGENT

3. JOHN E FULLER, INSPECTOR, U S POSTAL SERVICE
(Name, title, and address of second defendant)
1745 STOUT ST, SUITE 900, DENVER, CO 80299
At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? ___ Yes ✓ No (CHECK ONE). Briefly explain your answer:

FEDERAL AGENT

4. E QUINTANA #01052 OFFICER DENVER POLICE DEPT
(Name, title, and address of third defendant)
1331 CHEROKEE, DENVER CO 80202
At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? ✓ Yes ___ No (CHECK ONE). Briefly explain your answer:

DENVER POLICE OFFICER

(If you are suing more than three defendants, use extra paper to provide the information requested above for each additional defendant. The information about additional defendants should be labeled "A. PARTIES.")

(Rev. 1/30/07)                    2

# A. PARTIES -additional page 2

5. Kent Prose, Investigator, Office of District Attorney for the 2nd Judicial District, 201 W Colefax, Suite 801, Denver, CO 80202. The Defendant was acting under color of state law.

6. Mitchell R Morrissey, District Attorney for the 2nd Judicial District, 201 W Colefax, Suite 801, Denver, CO 80202. The Defendant was acting under color of state law.

7. Kandace Gerdes, Deputy District Attorney for the 2nd Judicial District, 201 W Colefax, Suite 801, Denver, CO 80202. The Defendant was acting under color of state law.

8. Joseph M Morales, Chief Deputy District Attorney for the 2nd Judicial District, 201 W Colefax, Suite 801, Denver, CO 80202. The Defendant was acting under color of state law.

9. State of Colorado- State of Colorado, Office of the State Attorney General ,Hon John Suthers, 1525 Sherman St, Denver Co 80203.

## A. PARTIES -additional page 3

i. Plaintiff, Solomon Ben- Tov COHEN Pro- SE, is a person within the jurisdiction of the United States, resident and tax- payer in the United States since 1990, and was a resident of the City of Denver, State of Colorado at all material times and is incarcerated at the GEO Detention Facility in Aurora, State of Colorado

ii. First Defendant Steve Hodges, and Second Defendant John E Fuller, were at all material times and are Inspectors of the United States Postal Service. Each Defendant is sued individually and in his official capacity.

iii. Third Defendant, Police Officer E Quintana, badge # 010152, was at all material times and is a member of the Denver Police Department. The Defendant is sued individually and in his official capacity.

iv. Fourth Defendant, Kent E Prose, investigator, was all material times and is an investigator working in the office of the District Attorney, 2nd Judicial District, County of Denver, State of Colorado. Said defendant was responsible for complaints filed and warrants issued to federal and State law enforcement officers in the State of Colorado. The Defendant is sued individually and in his official capacity.

v. Fifth Defendant, Mitchell R Morrissey, Reg no 13784, was all material times and is District Attorney for the 2nd Judicial District, County of Denver, State of Colorado. Said defendant was responsible for complaints filed and warrants issued to federal and State law enforcement officers in the State of Colorado. Said defendant was responsible for complaints filed and warrants issued to federal and State law enforcement officers in the State of Colorado. The Defendant is sued individually and in his official capacity. The Defendant is sued individually and in his official capacity.

4

## A. PARTIES additional page 4

vi. Sixth Defendant Kandace Gerdes, and Seventh Defendant Joseph M Morales Reg no 24706, were all material times and are Deputy District Attorney and Chief Deputy District Attorney respectively for the 2nd Judicial District, County of Denver, State of Colorado. Said defendants were responsible for prosecution. Each Defendant is sued individually and in his official capacity.

vii. State of Colorado

## B. JURISDICTION

1. I assert jurisdiction over my civil rights claim(s) pursuant to: (check one if applicable)

   ___✓___ 28 U.S.C. § 1343 and 42 U.S.C. § 1983 (state prisoners)

   ___✓___ 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal prisoners)

2. I assert jurisdiction pursuant to the following additional or alternative statutes (if any):

THIS ACTION FOR DAMAGES IS BROUGHT PURSUANT TO FIRST, FOURTH FIFTH, SIXTH, NINTH & FOURTEENTH AMENDMENTS TO THE US CONSTITUTION AND UNDER LAW OF STATE OF COLORADO.

## C. NATURE OF THE CASE

**BRIEFLY** state the background of your case. If more space is needed to describe the nature of the case, use extra paper to complete this section. The additional allegations regarding the nature of the case should be labeled "C. NATURE OF THE CASE."

viii. On July 23rd 2007, First Defendant Steve Hodges and Second Defendant John E Fuller, came to Plaintiff's hotel room at the Hampton Inn, part of the Hilton Group Inc, at 1825 Sherman, Denver, CO 80203 State of Colorado, and, to plaintiff's great personal distress and business damage, physically seized him and handcuffed him. First Defendant Steve Hodges interrogated Plaintiff without reading him *Miranda* rights as required by law searched his camouflage bag and, despite finding nothing illegal, arrested Plaintiff on false charges including possession of less than 1g of methamphetamine upon warrant obtained using false statements and perjured affidavit by Fourth Defendant Kent E Prose an economic crimes investigator with the District Attorneys Office for the 2nd Judicial District, State of Colorado.

ix. The complainants were individuals whom the defendants *knew* or should have known were lying or were ordered to lie as their associate corrupt Liechtenstein trustee Dr Markus Wanger had a financial interest in seeing Plaintiff wrongfully arrested and incarcerated or killed in jail, as almost happened three times at Denver County Jail.

(Rev. 1/30/07)

3

## C. NATURE OF THE CASE- additional sheet 1

x. Dr Markus Wanger is the registered trustee of the Corinne Diaz Trust recorded on the official register of trusts in Liechtenstein. Exhibit 28 is Court filing by Wanger.

xi. Corinne Diaz (née Cohen), Plaintiff's older sister is Foreign Grantor of the Corinne Diaz Trust, a registered trust in the Principality of Liechtenstein- see Exhibit 5.

xii. Plaintiff is the 98% beneficiary of the trust – see Exhibit 3.

xiii. In March 2007, Dr Markus Wanger received US$5.6 Million sent to him by PricewaterhouseCoopers from the voluntary solvent liquidation of Plaintiff's hedge fund, the Gazelle Global Fund Limited, on the Orders of Cayman Chief Justice Hon Anthony Smellie, after Plaintiff's hired lawyers Carl Linder at *Kleinfelds* in Miami, Florida and Christopher Russell at *Ogiers*, Cayman kept silent in Court, and did not represent him.

xiv. *PricewaterhouseCoopers* in an email sent to Plaintiff by David Walker, partner, in an email Exhibit 13, actually boasted that they were able to prevent Plaintiff's lawyer from saying anything in Court and that they would lie to the Cayman Chief Justice by telling that Plaintiff had been unable to arrange proper legal representation in his Court and that, as a result, the Chief Justice's Orders could not be carried out.

xv. This is how Dr Markus Wanger, the associate of complainants at **Solomon Pearl Blum Heymann & Stich LLP** received US$5.6Million in March 2007.

xvi. Dr Wanger refused to pay either immigration lawyer Christopher Nugent *of Holland & Knight*, Washington DC to file a Motion to Re- Open in absentia order of removal by *Hon Judge Gary Malphrus* Arlington Immigration Court, an *ultra vires* ruling.

## C. NATURE OF THE CASE- additional sheet 2

xvii. Plaintiff wrote and filed the motion pro- se and filed (unknowingly in the wrong place) with the Board of Immigration Appeals. He successfully wrote to Mary Loiselle ICE Field Director asking that she stay his deportation scheduled for May 29th 2007- "deportation stayed"- see exhibit 7 page 92..

xviii. Dr Wanger refused to continue make payments for root canals already begun to Washington DC oral surgeon Dr Goodman of *Goodman, Cohen, Mehinick,* as a result of which Plaintiff developed two abscess and had to be treated with vicodin and penicillin at *Georgetown University Hospital Emergency Room* in Washington DC, and similarly at *Denver Health ER*, Bannock St, Denver, Colorado and Dentist Dr Archer, Denver Colorado, and at Denver County Jail. These abscess' can be fatal.

xix. Dr Wanger canceled monthly payments to Plaintiff of $7,500 a month that had been made on the orders of the Chief Justice by Stuart Diamond of Diamond Law Associated www.dla.ky for over a year, forcing Plaintiff from his apartment at 1718 U St NW Apt 3 Washington DC 20009 onto the street.

xx. Washington DC trust lawyer Eli Guiterman of *Li, Latsey, Guiterman,* with whom Plaintiff signed Fee Agreement, reneged on commitment to bring Wanger in front of a Federal Judge. His immigration partner *Li* refused to represent Plaintiff.

xxi. Defendant Hodges ordered removed plaintiff's Acer notebook computer, data DVDs and legal documents which included a copy of Liechtenstein certificate showing Markus Wanger to be trustee of registered trust, Corinne Diaz Trust as well as trust deed and other important legal documents.

xxii. Over the next two months, many of Plaintiff's Denver friends, names taken from Plaintiff's cellphone, seized without warrant, including Matthew Fugate, John MacAfee and Richard Alexander aka Brett, arrested and taken to Denver County Jail. Robert Alexander put a hit on Plaintiff after being put into same dormitory.

## C. NATURE OF THE CASE- additional sheet 3

xxiii. Hodges called Third Defendant Police Officer Quintana who walked Plaintiff out through the lobby in front of manager, staff and guests.

xxiv. Plaintiff recognized him because he accosted him as he was printing letter to Fleishman Shapiro two days earlier. The arrest to place while plaintiff was waiting for Craig Fleishman to return his phone call.

xxv. Plaintiff was falsely imprisoned at Denver City Jail, Denver County and Colorado Mental Health Institute at Pueblo CMHIP after Hon Judge Robbins refused to allow Defendant to speak and denied his motions.

xxvi. Plaintiff was no allowed to post bail- unlawful immigration detainer.

xxvii. Plaintiff is the victim of a vendetta and multi-million $ fraud ordered by Christopher Wetherhill, British Freemason Dudley Cottingham and Michael Schroter of First Bermuda Securities, of Florida and Bermuda, over a political satirical play 'One Nation' written by Plaintiff as a private joke but now copyrighted with *The Library of Congress* which mentions secret securities trading accounts *as a joke*. Billions of dollars are involved. [Plaintiff had no intention of revealing to the Securities & Exchange Commission that Wetherhill operated a scheme which allowed traders to buy and sell securities, followed by delivery of cash in New York City.]

xxviii. They were partners and directors of Plaintiff's hedge fund, Gazelle Global Fund Limited and its Bermuda management company set up by Fund Administrator, Hemisphere Management Limited now owned by CITIGROUP (Citibank). Cottingham and Schroter and First Bermuda Securities are business associates of Michael Bloomberg, Mayor of New York City- Exhibit 3.

xxix. William Blum referred to in Exhibit 7 page 92, a partner New York office of in complainant law firm Solomon Pearl Blum Heymann & Stich LLP is also a friend of New York City Mayor Michael Bloomberg. William Blum is paranoid.

## C. NATURE OF THE CASE- additional sheet 4

xxx. On May 13th 2008, Seventh Defendant Chief Denver District Attorney Joseph M Morales, on behalf of Fifth Defendant, Denver District Attorney Mitchell R Morrissey moved to Dismiss the charges.

xxxi. Motion was granted by Denver District Judge Hon Sheila Rappaport on May 16th 2008- see Exhibit 29.

xxxii. Corinne Diaz Plaintiff's sister was found or reported dead in Australia on or about same day Defendants filed their motion.

xxxiii. Plaintiff was denied his Discovery throughout proceedings and only recently learned that the unlawful acts of the Defendants put his sister's life in danger.

## C. NATURE OF THE CASE additional sheet 5

BACKGROUND

Plaintiff, Solomon Ben- Tov COHEN MA (*Cantab*) Pro-SE is a citizen of the United Kingdom and resident of the United States since 1990.

Plaintiff was educated at Trinity College, CAMBRIDGE with an Honors Master's degree in mathematics and is also a trained concert violinist having studied with world famous *Professor Yfrah Neaman* and soloist *Alfredo Campoli.*

In November 1994 the United States Department of Labor issued a Exhibit 14 Labor Certificate to C K Partners Inc, certifying that qualified U.S. workers are not available for the position that the company is planning to offer to Plaintiff. H1- B visa was granted because the Plaintiff with a MASTERS Degree in Mathematics from CAMBRIDGE UNIVERSITY [Honors] is an expert in global equity and derivative markets: London Stock Exchange [Registered Representative, Registered Dealer], London Traded Options Market ("LTOM") [Registered Options Dealer], London International Financial Futures Exchange ("LIFFE"), Paris Bourse, Paris Options Market ("MONEP"), Amsterdam Options Exchange, New York Stock Exchange ("NYSE"), Chicago Board Options Exchange ("CBOE") and other exchanges. Plaintiff's H1- B was obtained by immigration lawyer Richard Newman, New York City, NY.

In 1996 Plaintiff was featured in Barron's 01/27/96 and 01/29/ 96 as top performing hedge fund advisor and full color page in Financial Trader magazine – see Exhibits 1 and 16.

## C. NATURE OF THE CASE  additional sheet 6

Full chapter on the Plaintiff's life and career are in book: *'Bulls Bears & Millionaires'* by author Robert Koppel, published in Chicago by Dearborn Publishing- Chapter Four: "Solomon's Mind". Plaintiff hand- delivered the Congressman's Beverly Hills, CA office copy of *'Bulls Bears & Millionaires'* by author Robert Koppel, published in Chicago by Dearborn Publishing- Chapter Four: "Solomon's Mind"- see exhibit 18.

Plaintiff is a donor to UK and US charities such as: *GMHC (New York) AmFar (American Foundation for AIDS Research), Human Rights Campaign Fund, March of Dimes*, and others – and was presented to Her Royal Highness Princess Diana in connection with his charitable donations- see Exhibit 15.

Plaintiff is not being allowed by Warden to print copies of his US tax returns and other key documents necessary for this case which are stored on web storage via supervised internet session or by being allowed to receive and connect to Law Library computer duplicate harddrive which is in a very safe place.

## D. CAUSE OF ACTION

State concisely every claim that you wish to assert in this action. For each claim, specify the right that allegedly has been violated and state all supporting facts that you consider important, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific cases to support your claim(s). If additional space is needed to describe any claim or to assert more than three claims, use extra paper to continue that claim or to assert the additional claim(s). The additional pages regarding the cause of action should be labeled "D. CAUSE OF ACTION."

1.    Claim One: _____

The acts and conduct of the defendants hereinbefore alleged constitute false arrest and imprisonment, malicious prosecution, fabrication of evidence, procurement and use of perjured testimony, perjury, abuse of process, prima facie tort, conspiracy tort, negligence, and gross negligence under the laws of the State of Colorado and violated Plaintiff's rights secured by the Fourth, Fifth, Sixth, Ninth, and Fourteenth Amendments to the US Constitution. This Court has pendent jurisdiction to hear and adjudicate these claims.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xxviii) inclusive of this complaint with the same force and effect as if fully set forth herein- see exhibits 1-33.

xxix.    Plaintiff was set up by Dr Wanger with the full knowledge and agreement of all the Defendants who acted knowingly and deliberately and not just negligently.

xxx.    Hon Judge William Robbins refused to allow Plaintiff to address him in Court after Plaintiff told him: "*My civil rights are being violated*". Judge Robbins: '*Sit down.*"

xxxi.    Judge Robbins refused to accept motions from the Plaintiff even tough he admitted that had substance to them. This included a motion asking to see the Discovery.

xxxii.    Plaintiff filed for a Writ of Habeas Corpus in Colorado Supreme Court to be allowed to speak in Court. Motion was denied.

(Rev. 1/30/07)

2.    Claim Two: _____

The aforesaid actions of defendants constituted a slander and defamation of plaintiff's character and an invasion of his privacy and false arrest and abuse of process and malicious prosecution, all in violation of the law of the State of Colorado which this Court may adjudicate as pendant to the First Cause of Action.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xxxii) inclusive of this complaint with the same force and effect as if fully set forth herein.

(Rev. 1/30/07)

14

3.    Claim Three: _____

The actions of Defendants Hodges and Fuller acting under color of federal law, and Defendants Police Officer Quintana, Investigator Prose, District Attorney Morrissey, Deputy District Attorney Kandace Gerdes and Chief Deputy District Attorney Morales acting under color of state law and on behalf of the People of the State of Colorado, constituted an invasion of plaintiff's right to be secure in his person, free of malicious prosecution, residence, papers, and effects against unreasonable seizures as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, an invasion of plaintiff's right to be free from deprivation of his liberty without due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and an invasion of plaintiff's right to privacy as guaranteed by the Ninth Amendment to the United States Constitution, and the Laws of The State of Colorado.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xxxii) inclusive of this complaint with the same force and effect as if fully set forth herein.

(Rev. 1/30/07)

## D. CAUSE OF ACTION      additional sheet 1

Claim Four:   Third Defendant Police Officer Quintana, Police Officer Quintana, acting individually and as agent and on behalf of defendant, State of Colorado, within the scope of his employment, wrongfully, maliciously and unlawfully placed plaintiff under arrest, transported him to Denver City Jail where he was confined, and that in subjecting plaintiff to false imprisonment and in maliciously prosecuting plaintiff. The Defendant violated the rules and regulations of the Denver Police Department.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xxxii) inclusive of this complaint with the same force and effect as if fully set forth herein.

16

## D. CAUSE OF ACTION    additional sheet 2

Claim Five: As a direct and proximate result of the above described unlawful and malicious acts of Third Defendant police officer Quintana, all committed under color of their authority as police officer, and while acting in that capacity, Plaintiff suffered grievous bodily harm and emotional damage, all of which is in violation of his rights under the laws and Constitution of the United States, in particular the First, Fourth, Fifth, Eighth and Fourteenth amendments thereof and 42 U.S.C. and 1983, 1985, 1986, and 1988.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xxxii) inclusive of this complaint with the same force and effect as if fully set forth herein.

xxxiv. False imprisonment.

17

## D. CAUSE OF ACTION    additional sheet 3

Claim Six: The first seven Defendants and William Blum conspired together to violate the due process and other civil rights of the plaintiff and to charge him with a crime which he did not commit and which the Defendants should have recognized he did not commit.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xxxii) inclusive of this complaint with the same force and effect as if fully set forth herein.

xxxiii.    The witness statements contradict each other.

xxxiv.    The investigative report differs from the witness statements.

xxxv.    Defendant District Attorney Morrissey and the other defendants refused to show the Discovery to eminent Denver criminal defense attorney Charles Elliott.

## D. CAUSE OF ACTION     additional sheet 4

Claim Seven:

xxxvi.   The investigation conducted by the defendants and their actions taken thereon were taken in bad faith or, in the alternative, negligently, and the plaintiff was damaged by reason thereof in at least the following respects:

A. Loss of personal freedom 313 days

B. Pain and suffering, both physical and emotional; and

C. Loss of 3 lower molars – exhibit being used in class action lawsuit re: denial of orthodontic and periodontal care to those to inmates awaiting trial and confined within County Jails and Department of Corrections Facilities  in State of Colorado.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xxxv) inclusive of this complaint with the same force and effect as if fully set forth herein.

(19

## D. CAUSE OF ACTION    additional sheet 5

<u>Claim Eight:</u>

The wrongful acts of the defendants complained of herein were undertaken maliciously and include, without limitation, the following:

xxxvii.    Intentionally causing the arrest of the plaintiff when the defendants knew or should have known that complainants were acting in order to defraud Plaintiff of US$ 7 Million- total assets of the Trust;

xxxviii.    The failure of the defendants to interview witnesses who substantiated the plaintiff's account of his activities;

xxxix.    The failure of the defendants to take into account facts which they knew cleared the plaintiff;

xl.    The intent of the defendants from the beginning of their investigation to charge the plaintiff with a crime;

xli.    The failure of Defendant the State of Colorado and Defendant Morrissey to properly and adequately train investigators in the District Attorney's Department in investigative techniques and procedures;

xlii.    Preparation of groundless reports and affidavits in order to obtain an arrest warrant against the plaintiff; and

xliii.    The procurement of groundless charges against the plaintiff based upon incomplete, unsupported evidence which the defendants knew or should have known was false, distorted or fabricated.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xxxvi) inclusive of this complaint with the same force and effect as if fully set forth herein.

## D. CAUSE OF ACTION   additional sheet 6

Claim Nine

Plaintiff was wrongfully denied a speedy trial.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xliii) inclusive of this complaint with the same force and effect as if fully set forth herein.

xliv.   Plaintiff was top of his class at CMHIP from the week he arrived.

xlv.   Plaintiff was not delusional or incompetent to proceed. He was telling the truth. Everything Plaintiff said was substantiated by Colorado Mental Health Institute at Pueblo by January 2008.

xlvi.   Criminal defense attorney Charles Elliott visited the Plaintiff at Denver County Jail before Plaintiff was taken to CMHIP and found him perfectly competent to proceed.

## D. CAUSE OF ACTION    additional sheet 7

<u>Claim Ten</u>: Upon false information and perjured and contradictory witness statements , the arrests were made pursuant to an erroneous and false report by Defendant Investigator Prose, an economic crime investigator acting both outside the scope of his duties and corruptly within as he arrested victim of $7Million fraud, wrongly charging Plaintiff with drug possession when he is in fact innocent.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xlvi) inclusive of this complaint with the same force and effect as if fully set forth herein.

## D. CAUSE OF ACTION    additional sheet 8

Claim Eleven:

That the defendants could have ascertained the falsity of the charge had the Defendants acting individually and on behalf of the State of Colorado exercised reasonable diligence in performing their duties and not neglected to make reasonable and necessary factual investigation of the aforementioned charge.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xlvi) inclusive of this complaint with the same force and effect as if fully set forth herein.

23

## D. CAUSE OF ACTION        additional sheet 9

Claim Twelve:

That as a result of false arrest and imprisonment, plaintiff, being a person within the jurisdiction of the United States, was subjected to deprivations of his rights, privileges, and immunities secured by the Constitution of the United States and the laws of the United States, sustained deprivations of his personal liberty, invasions of his privacy, and violations of his civil rights, has suffered and will continue to suffer from psychological harm, mental distress, humiliation, embarrassment, fear, and defamation of his character and reputation, was prevented from attending to his usual duties and underwent psychological treatment, all to his damage in the sum in excess of $10 Million.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xlvi) inclusive of this complaint with the same force and effect as if fully set forth herein.

xlvii.    CMHIP psychiatrist Dr Lenart Abel opined that Plaintiff will never work again because of Trauma. CMHIP psychologist Dr Sean Kelly does not agree.

24

## D. CAUSE OF ACTION    additional sheet 10

Claim Thirteen:

Defendants are no immunity from prosecution for these acts.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xlvii) inclusive of this complaint with the same force and effect as if fully set forth herein.

xlviii.    Destruction of exculpatory "evidence".

xlix.    Defendants knowingly attempted to convict Plaintiff if crimes he did not commit through perjury and knowing use of perjured testimony.

25

## D. CAUSE OF ACTION    additional sheet 11

<u>Claim Fourteen:</u> Defendants Hodges and Fuller ordered the hiding and destruction of exculpatory evidence.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through xlix) inclusive of this complaint with the same force and effect as if fully set forth herein.

I.    Copy of trust deed and Liechtenstein Trust registration certificate showing Wanger is registered trustee, that Plaintiff is rightful owner of $5.6 Million were on desk in Plaintiff's hotel room at the time of his arrest.

## D. CAUSE OF ACTION    additional sheet 12

Claim Fifteen:

That the defendant District Attorney Morrissey unreasonably and obstinately failed, neglected, and refused to settle, compromise, or adjust the causes of the plaintiff herein.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through l) inclusive of this complaint with the same force and effect as if fully set forth herein.

li.   After Defendants Morrissey, Gerdes and Morales were given information by CMHIP in January 2008 that Plaintiff had been setup they continued to maliciously prosecute Plaintiff.

27

## D. CAUSE OF ACTION     additional sheet 13

Claim Sixteen:

Each of the defendants, individually and in concert with the others, acted under pretense and color of law and his official capacity but the acts were beyond the scope of his jurisdiction and without authorization of law and in abuse of their powers, and each defendant acted willfully, knowingly, and with specific intent to deprive plaintiff of right to freedom from unlawful arrest, detention and imprisonment, all which rights are secured to plaintiff by the fourth, sixth and fourteenth amendments to the Constitution of the United States, and by 42 U.S.C. 1983, and to allow Plaintiff's sister Corinne Diaz to die or be killed in Australia.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through li) inclusive of this complaint with the same force and effect as if fully set forth herein.

28

## D. CAUSE OF ACTION       additional sheet 14

Claim Seventeen:

Plaintiff alleges that in doing the acts and things above complained of, the defendants were conspirators engaged in a scheme and conspiracy designed and intended to deny and deprive him of rights guaranteed to the plaintiff under the Constitution and laws of the United States and particularly those hereinabove enumerated.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through li) inclusive of this complaint with the same force and effect as if fully set forth herein.

## D. CAUSE OF ACTION          additional sheet 15

Claim Eighteen:

Plaintiff alleges that as the direct consequences and result of the acts of the defendants hereinabove complained of, plaintiff suffered injuries both physical and mental; plaintiff has suffered and will in the future suffer great pain and has sustained a severe nervous shock with resultant nervous injuries; upon information and belief allege that certain of the injuries are of a permanent nature; plaintiff has suffered great humiliation and injury to his reputation and business.

Supporting Facts:

Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in paragraphs i) through li) inclusive of this complaint with the same force and effect as if fully set forth herein.

30

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? _✓_ Yes ___ No (CHECK ONE). If your answer is "Yes," complete this section of the form. If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit. The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1. Name(s) of defendant(s) in prior lawsuit:

MICHAEL MUKASEY, ATTORNEY GENERAL OF THE UNITED STATES

2. Docket number and court name:

'08-CV-01844-LTB-CBS UNITED STATES DISTRICT COURT STATE OF COLORADO

3. Claims raised in prior lawsuit:

APPLICATION FOR WRIT OF HABEAS CORPUS

4. Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?):

PENDING

5. If the prior lawsuit was dismissed, when was it dismissed and why?

N/A

6. Result(s) of any appeal in the prior lawsuit:

N/A

SEE ADDITIONAL SHEETS

## F. ADMINISTRATIVE RELIEF

1. Is there a formal grievance procedure at the institution in which you are confined?
   _✓_ Yes ___ No (CHECK ONE).

2. Did you exhaust available administrative remedies? _✓_ Yes ___ No (CHECK ONE).

(Rev. 1/30/07)

7

39

## E. PREVIOUS LAWSUITS (continued) - additional sheet 1

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? _X_ Yes____No.

1. Name of Defendants in prior lawsuit:

   Jason Clemens, Immigration Agent
   Shana Martin, Assistant Chief Counsel
   Department of Homeland Security

2. Docket number and court name:

   **' 08- cv- 01991-ZLW**
   US DISTRICT COURT, DISTRICT OF COLORADO

3. Claims raised in prior lawsuit:

   Making false statement, Perjury
   Civil Rights violations

4. Disposition of prior lawsuit:

   Dismissed

5. If prior lawsuit was dismissed when was it dismissed and why?

   *Heck v Humphrey*

6. Result of any appeal in the prior lawsuit:

   Appeal pending

32

## E. PREVIOUS LAWSUITS (continued) - additional sheet 2

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? _X_ Yes_____No.

1. Name of Defendant in prior lawsuit:

    Denver County Jail,CO and
    Chaplain Rev John Scott

2. Docket number and court name:

    **1:08-cv-00978-ZLW**
    US DISTRICT COURT, DISTRICT OF
    COLORADO

3. Claims raised in prior lawsuit:

    i.   Denial of kosher food- 1st
         <u>Amendment violation</u>
    ii.  request for additional law <u>library
         time</u>

4. Disposition of prior lawsuit:

    Abandoned/ Dismissed

5. If prior lawsuit was dismissed when
   was it dismissed and why?

    Denver County Jail granted both after
    lawsuit was filed and criminal charges
    dropped. Official reason:
    failure to notify change of address.

6. Result of any appeal in the prior
   lawsuit:

    N/A

32

## E. PREVIOUS LAWSUITS (continued) - additional sheet 3

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? _X_ Yes____No.

7. Name of Defendant in prior lawsuit:

Katherine Davis, HSA
Aurora/ ICE Detention Facillity

8. Docket number and court name:

**1:08-cv-02089-ZLW**
US DISTRICT COURT, DISTRICT OF COLORADO

9. Claims raised in prior lawsuit:

Denial of medication

10.    Disposition of prior lawsuit:

Withdrawn

11.    If prior lawsuit was dismissed when was it dismissed and why?

N/A

12.    Result of any appeal in the prior lawsuit:

N/A

34

## E. PREVIOUS LAWSUITS (continued) - additional sheet 4

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? _X_ Yes____ No.

13.   Name of Defendant in prior
     lawsuit:

Agent john Doe
US Capitol Police, DC

14.   Docket number and court name:

**1:08-cv-02188-LTB-CBS**
US DISTRICT COURT, DISTRICT OF COLORADO

15.   Claims raised in prior lawsuit:

False arrest etc

16.   Disposition of prior lawsuit:

Pending

17.   If prior lawsuit was dismissed
     when was it dismissed and why?

N/A

18.   Result of any appeal in the prior
     lawsuit:

N/A

35

## G. REQUEST FOR RELIEF

State the relief you are requesting. If you need more space to complete this section, use extra paper. The additional requests for relief should be labeled "G. REQUEST FOR RELIEF."

WHEREFORE, Plaintiff, Solomon Ben- Tov COHEN pro- se, demands the following relief jointly and severally, against all the defendants:

1. THAT the Defendants be ordered publish an apology and admission of wrongful prosecution in both Denver newspapers;

2. To grant Plaintiff a trial by jury of all issues so triable in these causes of action and that a jury assess compensatory, punitive and exemplary damages against defendants in excess of $10 Million;

3. Attorney's fees pursuant to 42 U.S.C. 1988;

4. Such other and further relief as this Court may deem appropriate under the circumstances.

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed on ___12/11/08___
(Date)

_____
(Prisoner's Original Signature)

(Rev. 1/30/07)

35

# CERTIFICATE OF SERVICE

I hereby certify that, on _____ 12/17/08 _____ a true and correct copy of the exhibits was sent by first class mail to:

> Steve Hodges, Inspector
> United States Postal Service
> 1745 Stout St, Suite 900
> Denver
> CO 80299

Dated: 12/17/08          Signed: _____

Solomon Ben- Tov COHEN MA(*Cantab*)
Pro- SE

# CERTIFICATE OF SERVICE

I hereby certify that, on _____12/17/08_____a true and correct copy of
the exhibits was sent by first class mail to:

> John E Fuller, Inspector
> United States Postal Service
> 1745 Stout St, Suite 900
> Denver
> CO 80299

Dated: 12/17/08          Signed: _____

> Solomon Ben- Tov COHEN MA(Cantab)
> Pro- SE

# CERTIFICATE OF SERVICE

I hereby certify that, on _____ 12/17/08 _____ a true and correct copy of
the exhibits was sent by first class mail to:

Officer E Quintana Badge # 01052
Denver Police Department
1331 Cherokee
Denver
CO 80202

Dated: 12/17/08           Signed: _____

Solomon Ben- Tov COHEN MA(Cantab)
Pro- SE

# CERTIFICATE OF SERVICE

I hereby certify that, on _____ 12/17/08 _____ a true and correct copy of the exhibits was sent by first class mail to:

Kent Prose, Investigator
Office of District Attorney
200 W Colefax, Suite 801
Denver
CO 80202

Dated: 12/17/08          Signed: _____

Solomon Ben- Tov COHEN MA(Cantab)
Pro- SE

# CERTIFICATE OF SERVICE

I hereby certify that, on _____ 12/17/08 _____ a true and correct copy of
the exhibits was sent by first class mail to:

Mitchell R Morrissey, District Attorney
Office of District Attorney
200 W Colefax, Suite 801
Denver
CO 80202

Dated: 12/17/08          Signed: _____

Solomon Ben- Tov COHEN MA(*Cantab*)
Pro- SE

# CERTIFICATE OF SERVICE

I hereby certify that, on _____12/17/08_____a true and correct copy of the exhibits was sent by first class mail to:

Kandace Gerdes, Deputy District
Attorney Office of District Attorney
200 W Colefax, Suite 801
Denver
CO 80202

Dated: 12/17/08          Signed: _____

Solomon Ben- Tov COHEN MA(Cantab)
Pro- SE

# CERTIFICATE OF SERVICE

I hereby certify that, on ___ 12/17/08 _____ a true and correct copy of
the exhibits was sent by first class mail to:

> Joseph M Morales, Chief Deputy District
> Attorney Office of District Attorney
> 200 W Colefax, Suite 801
> Denver
> CO 80202

Dated: 12/17/08                    Signed: _____

                                   Solomon Ben- Tov COHEN MA(_Cantab_)
                                              Pro- SE

## CERTIFICATE OF SERVICE

I hereby certify that, on _____ 12/17/08 _____ a true and correct copy of the exhibits was sent by first class mail to:

Hon John Suthers, Attorney General
State of Colorado,
1525 Sherman St
Denver
CO 80202

Dated: 12/17/08          Signed: _____

Solomon Ben- Tov COHEN MA(Cantab)
Pro- SE

# TABLE OF EXHIBITS
## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| No | EXHIBIT | PAGE |
|---|---|---|
| 1 | Article from *Barrons* newspaper article about Plaintiff (copy)- reprint from Dow Jones News Service | 40 |
| 2 | Investigative report written by Defendants Hodges and Prose | 41-44 |
| 3 | AFFIDAVIT FROM SWORN by PRICEWATERHOUSECOOPERS' Nick Freeland - Proof Plaintiff is 98% of Corinne Diaz Trust and that Dr Markus Wanger is trustee (copy) | 45-61 |
| 4 | PROOF all Plaintiff's money $5.6 Million sent to Dr Markus Wanger -email from Dudley Cottingham to Plaintiff. [CMHIP in supervised session allowed Plaintiff to access his stored emails.] | 62-63 |
| 5 | Corinne Diaz Trust Deed (copy) | 64-86 |
| 6 | Plaintiff's 07/21/2007 letter to Fleishman Shapiro (copy) recently sent to Plaintiff | 88 |
| 7 | Supporting Affidavit for Arrest sworn by Defendant Prose (copy) | 89-92 |
| 8 | MITTIMUS- Denver County Court (CR) (copy) | 93 |
| 9 | Warrant for Plaintiff's Arrest 07/19/2007 (Copy) | 94 |
| 10 | Denver County Court filing- False Complaint by District Attorney's Economic Crime Unit | 95 |

# TABLE OF EXHIBITS
## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| No | EXHIBIT | PAGE |
|---|---|---|
| 21 | Letter from Plaintiff to Defendant District Attorney Mitchell R Morrissey sent from CMHIP December 2007<br><br>No reply received- | 156-159 |
| 22 | Witness Statement from Keli Hynes, employee at Solomon Pearl Blum Heymann & Stich LLP (copy) | 160-1 |
| 23 | False witness statement Bruce Rodhe's secretary Marta Strzeszewski, Solomon Pearl Blum Heymann & Stich LLP (copy)<br>Notarized by Keli Hynes | 162-3 |
| 24 | Witness statement from Laura J Parke employee<br><br>Solomon Pearl Blum Heymann & Stich LLP<br>(copy) | 164 |
| 25 | Report written and submitted by Defendant Hodges, Inspector US Postal services | 165-7 |
| 26 | ORDER OF SUPREME COURT granting in forma pauperis, DENYING Writ of *Habeas Corpus* | 168 |
| 27 | Wanger refuses to resign even though appointed by Plaintiff<br>- copy of email for Plaintiff sent via Denver Deputy Public Defender Demetria Trujillo from Liechtenstein lawyer Dr Holzhacker | 169-171 |
| 28 | Petition in German filed by Wanger 06/11/08 in Princely Court, Liechtenstein to have Corinne's instructions that Plaintiff is 98% beneficiary declared *illegal* (copy) with English translation | 172-184 |
| 29 | ORDER TO DISMISS<br>signed by Hon Judge Sheila Rappaport,<br>Denver District Court (copy) | 185 |
| 30 | Corinne Diaz (née Cohen) Birth Certificate (copy)<br>-- to be obtained | |

# TABLE OF EXHIBITS
## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| No | EXHIBIT | PAGE |
|----|---------|------|
| 31 | Letter from Plaintiff's sister to Plaintiff about problem with trustee (copy)<br><br>– to be obtained | |
| 32 | Photograph of Corinne Diaz with her brother, Plaintiff<br>– to be obtained | |
| 33 | Death certificate of Corinne Diaz (née Cohen)<br><br>– to be obtained | |

# TABLE OF EXHIBITS
## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| No | EXHIBIT | PAGE |
|---|---|---|
| 11 | Complaint by Defendant Mitchell R Morrissey (copy) | 96 |
| 12 | **Proof of lawyer intimidation/ malpractice** Email from PricewaterhouseCoopers' partner David Walker (copy) from Plaintiff's web site. *[Kleinfeld had Plaintiff sign Fee Agreement at his home in Miami Beach FL for Ogier to represent him in Court and fight liquidation.]* | 97 |
| 13 | Letter from Senior Counsel Christopher Russell at Law firm Ogier to plaintiff at Denver County Jail (copy) | 98 |
| 14 | **Proof Immigration & Customs Enforcement (ICE) are lying** Plaintiff's work visa in his passport, multiple entry stamps, I- 94 and INS Work Approval for H1- B 1994-97, 97- 2000 (copies) | 99- 102 |
| 15 | Color copy of Photo taken by Royal Photographer in 1992 of Plaintiff with HRH Princess Diana (see http://hometown.aol.com/gazellecayman) | 103 |
| 16 | Color reprint of full page feature on Plaintiff from FINANCIAL TRADER MAGAZINE 1996 | 104 |
| 17 | B& W copy of Plaintiff's social security statement | 105-108 |
| 18 | From book "*Bulls, Bears & Millionaires*" published by Dearborn B&W copy of chapter Four about Plaintiff written by author Robert Koppel, Chicago Copies are available from www.amazon.com | 109-119 |
| 19 | 'Secret stock and options trading accounts at Hemisphere' *joke* from Act 1 scene 3 of comedy 'One Nation" written by Plaintiff in 2000. | 120 |
| 20 | Printed copy of complete play (comedy) 'One Nation' written by Plaintiff and copyrighted through www.legalzoom.com | 121-155 |

# TABLE OF EXHIBITS
## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| No | EXHIBIT | PAGE |
|----|---------|------|
| 1 | Article from *Barrons* newspaper article about Plaintiff (copy)- reprint from Dow Jones News Service | 40 |
| 2 | Investigative report written by Defendants Hodges and Prose | 41-44 |
| 3 | AFFIDAVIT FROM SWORN by PRICEWATERHOUSECOOPERS' Nick Freeland - Proof Plaintiff is 98% of Corinne Diaz Trust and that Dr Markus Wanger is trustee (copy) | 45-61 |
| 4 | PROOF all Plaintiff's money $5.6 Million sent to Dr Markus Wanger -email from Dudley Cottingham to Plaintiff. [CMHIP in supervised session allowed Plaintiff to access his stored emails.] | 62-63 |
| 5 | Corinne Diaz Trust Deed (copy) | 64-86 |
| 6 | Plaintiff's 07/21/2007 letter to Fleishman Shapiro (copy) recently sent to Plaintiff | 88 |
| 7 | Supporting Affidavit for Arrest sworn by Defendant Prose (copy) | 89-92 |
| 8 | MITTIMUS- Denver County Court (CR) (copy) | 93 |
| 9 | Warrant for Plaintiff's Arrest 07/19/2007 (Copy) | 94 |
| 10 | Denver County Court filing- False Complaint by District Attorney's Economic Crime Unit | 95 |

# TABLE OF EXHIBITS
## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| No | EXHIBIT | PAGE |
|---|---|---|
| 11 | Complaint by Defendant Mitchell R Morrissey (copy) | 96 |
| 12 | **Proof of lawyer intimidation/ malpractice** Email from PricewaterhouseCoopers' partner David Walker (copy) from Plaintiff's web site. *[Kleinfeld had Plaintiff sign Fee Agreement at his home in Miami Beach FL for Ogier to represent him in Court and fight liquidation.]* | 97 |
| 13 | Letter from Senior Counsel Christopher Russell at Law firm Ogier to plaintiff at Denver County Jail (copy) | 98 |
| 14 | **Proof Immigration & Customs Enforcement (ICE) are lying** Plaintiff's work visa in his passport, multiple entry stamps, I- 94 and INS Work Approval for H1- B 1994-97, 97- 2000 (copies) | 99- 102 |
| 15 | Color copy of Photo taken by Royal Photographer in 1992 of Plaintiff with HRH Princess Diana (see http://hometown.aol.com/gazellecayman) | 103 |
| 16 | Color reprint of full page feature on Plaintiff from FINANCIAL TRADER MAGAZINE 1996 | 104 |
| 17 | B& W copy of Plaintiff's social security statement | 105-108 |
| 18 | From book *"Bulls, Bears & Millionaires"* published by Dearborn B&W copy of chapter Four about Plaintiff written by author Robert Koppel, Chicago Copies are available from www.amazon.com | 109-119 |
| 19 | 'Secret stock and options trading accounts at Hemisphere' *joke* from Act 1 scene 3 of comedy 'One Nation" written by Plaintiff in 2000. | 120 |
| 20 | Printed copy of complete play (comedy) 'One Nation' written by Plaintiff and copyrighted through www.legalzoom.com | 121-155 |

TABLE OF EXHIBITS

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| No | EXHIBIT | PAGE |
|---|---|---|
| 21 | Letter from Plaintiff to Defendant District Attorney Mitchell R Morrissey sent from CMHIP December 2007<br><br>No reply received- | 156-159 |
| 22 | Witness Statement from Keli Hynes, employee at Solomon Pearl Blum Heymann & Stich LLP (copy) | 160-1 |
| 23 | False witness statement Bruce Rodhe's secretary Marta Strzeszewski, Solomon Pearl Blum Heymann & Stich LLP (copy)<br>Notarized by Keli Hynes | 162-3 |
| 24 | Witness statement from Laura J Parke employee<br><br>Solomon Pearl Blum Heymann & Stich LLP (copy) | 164 |
| 25 | Report written and submitted by Defendant Hodges, Inspector US Postal services | 165-7 |
| 26 | ORDER OF SUPREME COURT granting in forma pauperis, DENYING Writ of *Habeas Corpus* | 168 |
| 27 | Wanger refuses to resign even though appointed by Plaintiff<br>- copy of email for Plaintiff sent via Denver Deputy Public Defender Demetria Trujillo from Liechtenstein lawyer Dr Holzhacker | 169-171 |
| 28 | Petition in German filed by Wanger 06/11/08 in Princely Court, Liechtenstein to have Corinne's instructions that Plaintiff is 98% beneficiary declared *illegal* (copy) with English translation | 172-184 |
| 29 | ORDER TO DISMISS<br>signed by Hon Judge Sheila Rappaport,<br>Denver District Court (copy) | 185 |
| 30 | Corinne Diaz (née Cohen) Birth Certificate (copy)<br>– to be obtained | |

# TABLE OF EXHIBITS
# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

| No | EXHIBIT | PAGE |
|----|---------|------|
| 31 | Letter from Plaintiff's sister to Plaintiff about problem with trustee (copy)<br><br>– to be obtained | |
| 32 | Photograph of Corinne Diaz with her brother, Plaintiff<br>– to be obtained | |
| 33 | Death certificate of Corinne Diaz (née Cohen)<br><br>– to be obtained | |

County Court, City and County of Denver, Colorado
City and County Building, Room 111
1437 Bannock Street
Denver, CO 80202

**Plaintiff:**  THE PEOPLE OF THE STATE OF
COLORADO

**Defendant:  SOLOMON COHEN**

**DOB:  12/24/65**

σ    COURT USE ONLY    σ

Case Number: 07CR04282

Div.: Criminal    Ctrm: 13

### SUPPORTING AFFIDAVIT FOR ARREST WARRANT

I, Kent Prose, of lawful age do swear upon my oath to the facts set forth below and on 3 continuation pages:

Your affiant, Kent E. Prose, an investigator for the Denver District Attorney's Office, Economic Crime Unit, was assigned to investigate allegations of Possession of a Controlled Substance (Methamphetamine) and Reckless Endangerment by Solomon Ben-Tov Cohen at 1801 Broadway, suite 500, in the City and County of Denver, Colorado. Your affiant assisted United States Postal Inspector Steve Hodges, who initiated the investigation. Your affiant reviewed reports from Inspector Hodges, as well as documents obtained in the course of the investigation. Postal Inspector Hodges reported the following information to your affiant.

"The basis for this investigation was information received by the U.S. Postal Inspection Service regarding a suspicious letter that had been received by the private law firm of Solomon Pearl Blum Heymann & Stich LLP located in Denver, CO.

On July 9, 2007, I received a telephone call from the Denver Police Department dispatch center regarding a suspicious letter containing an unknown powder like substance that had been received by a private law firm in Denver, CO. Denver Police dispatch advised me that police and fire-hazardous materials units were on the scene of the incident. I responded to the location to initiate an investigation into the matter.

Upon arrival I met with Denver Fire Department officer Butch Hoss outside 1801 Broadway. He briefed me on the status of the call. Hoss said that a hazardous materials survey team was assessing the unknown powder like substance found in the letter in question. He also said that no one related to the suspicious letter had complained of any physical illness that may have been related to the unknown powder like substance. Within thirty minutes the Denver Fire Department hazardous materials team reported that the unknown substance had field screened positive for

89

Page 2

methamphetamine. Hoss told me that he will clear the scene once I take custody of the letter and contents.

I entered the building at 1801 Broadway and went to suite 500, the private law firm of Solomon Pearl Blum Heymann & Stich LLP. I met Denver Fire Department hazardous materials unit members Jim Leo and Sean Armstrong. They briefed me on their hazardous materials assessment and directed me to the office where the letter and contents remained.

I photographed the envelope, letter and powder like substance as I found them in the office. I held these items as evidence. U.S. Postal Inspectors R. Barnett and J. Fuller arrived on scene and assisted me in the investigation.

Inspector Fuller interviewed receptionist Keli Hynes (DOB: 06/23/1966). Hynes stated that she believed she knew who may be responsible for the mailing. Hynes began by saying that the law firm's Denver office had received a couple of faxes over the last few weeks from a man identifying himself as Solomon Cohen. She said that this man also showed up at the Denver office to hand deliver a message.

I asked Hynes to tell me what happened today regarding the letter the office received with the powder like substance in it. Hynes said that after the mail was delivered to the office she began to open what the office received. Among the other mail she noticed a business size letter that had a handwritten address. She took it to another employee, Marta Strzeszewski, to show it to her. Hynes commented that it looked like the same handwriting as the previous faxes. As Hynes opened the letter she saw the powder inside and set it down on a desk. Strzeszewski called 911.

I asked Hynes to tell me about the faxes that her office had received that she thought were related to the letter in question. Hynes said that sometime in late June 2007 her office received a fax that was a printed copy of a page from the law firm's web site of attorney Bruce E. Rohde's biography. On that page was a handwritten message. The handwritten portion asked how the person could receive meth in return for something like evidence about poison. Hynes said it was very strange. The fax was signed Solomon B. Cohen. Hynes provided a copy of the fax. The fax header indicated that it was sent from 3036231138, Kinko's LoDo on 6/26/07 at 19:04 hours. Later in the course of this investigation I reviewed surveillance video from the Kinko's LoDo store in Denver, CO in an effort to identify the person that sent this fax. I found the person that would have been responsible for sending the fax by correlating the fax header time and date with the surveillance system time and date and the sending fax machine time and date. The person shown on the surveillance video matches the appearance of the photograph of Solomon Ben-Tov Cohen with an alien registration number A77309675. Also, in one portion of the store video surveillance a page that had been sent on the fax had matching unique graphic features of the fax received by the law firm.

Hynes supplied me with a letter that a man identifying himself as Solomon Cohen had delivered to the law firm's Denver office. The letter is dated June 28, 2007 and signed, "Solomon Ben-Tov COHEN MA (cantab) DOB 12/24/1960". Hynes provided me the original letter but only a

Page 3

copy of the envelope it was enclosed in originally.

Hynes said her office received another fax on July 2, 2007 that indicated it was from "Solomon B Cohen MA (Cantab)". The fax consisted of two pages. The message was addressed to "Mr. Rodhe", an attorney in the law firm. The message was, "Dear Mr Rodhe, Please don't do anything re: above. Sincerely, Solomon B Cohen MA (Cantab)". Hynes provided me with a copy of this two page fax.

Hynes said another fax was received by her office on July 6, 2007. Again, the fax was two pages and signed "Solomon B COHEN MA (Cantab)". This fax consisted of a short message on the fax cover sheet followed by a full page letter. In the full page letter one of the paragraphs reads, "Secure a claim for damages of $1Million (I am sending your firm the poison he had me take.) on his apartment 720 16th St #416 Denver Co 80202." The context of the letter indicates that "the poison" may be crystal meth.

Hynes also said that a person identifying himself as Solomon Cohen left a voice message on the office answering system on July 5, 2007 at approximately 1:20 p.m... Hynes allowed me to listen and make an audio recording of the message.

ADDITIONAL DATA

Records checks indicate that a person named Solomon Ben-Tov Cohen (DOB: 12/24/~~1960~~ 1961) is an alien registered under the alien registry number A77309675 and has an FBI number of 83165NB4.

In the voice mail and in the other documents related to this case the person calling himself Solomon Cohen provides a cellular phone number of (303) 641-9207. This is a Sprint PCS prefix. Attempts to date of contacting this number result in reaching the automated voice mail message system assigned to the number.

Cohen indicates that he is staying at the Grand Hyatt in Denver, CO. According to the Grand Hyatt security staff no one with that name, variation of the name or description has stayed or is staying at the hotel.

Two other names and addresses that are mentioned in documents sent to the law firm are "Sean" at 1424 Elizabeth St., Denver, CO and Brian Tielker at 720 16th St. #416, Denver, CO 80202. Neither of these individuals has been contacted at this time.

Keli Hynes said that I should speak with an attorney with their firm, William "Bill" Blum. He was at the firm's New York, NY office at the time. I interviewed Blum over the telephone. He stated that in 2004 an associate of his, Dr. Markus Wanger, in Lichtenstein contacted Blum regarding the use of Blum's office for a meeting with a client of Wanger's, Solomon Cohen. Prior to the arranged meeting at Blum's office between Wanger and Cohen, Cohen sent documents to Blum's office. Blum read the documents and concluded that Cohen may be

Page 4

mentally unstable. Blum contacted Wanger and asked that he not use his office for the meeting with Cohen because he was uncomfortable with what he knew of Cohen. Blum said that was the last information he had regarding Cohen until the letter at his Denver office on July 9, 2007. Blum contacted Wanger and asked if he still had a relationship with Cohen. Wanger responded back and said that Cohen was strange and he is claiming to be a beneficiary in a trust called Corinne Diaz Trust.

Regarding the Corinne Diaz Trust, in some of Cohen's correspondence with the Solomon Pearl Blum Heymann & Stich LLP law firm he makes reference to requesting assistance in claiming part or all of the Corinne Diaz Trust that he believes he is entitled to.

## PERSONAL AND CRIMINAL HISTORY

Solomon Ben-Tov Cohen has criminal records in California, Florida, Utah and Virginia. According the Immigration and Customs Enforcement this person has a Warrant for Alien Arrest maintained in his A file. Charges in his criminal history are for possession of a controlled substance and felony fleeing. The earliest record of Cohen in the United States is in 2000 by Immigration and Naturalization Service for entry of an alien at improper time/place."

Your affiant contacted Inspector Hodges and confirmed that the package of methamphetamine weighed 2.6 grams, and the methamphetamine itself weighed .6 grams.

Your affiant contacted ICE and confirmed that there is a deportation order for Mr. Cohen, but that the order has been stayed.

Based on the foregoing, your affiant respectfully requests that an At Large Warrant be issued for the arrest of Solomon Cohen, DOB:  12/24/65, for POSSESSION OF A CONTROLLED SUBSTANCE - SCHEDULE II - 1 GRAM OR LESS, 18-18-405(1),(2.3)(a)(I) C.R.S. (F6) 1 COUNT; and RECKLESS ENDANGERMENT, 18-3-208 C.R.S. (M3) 1 COUNT.

AFFIANT

Subscribed and Sworn to before me this ___ day of _____, 2007, at the City and County of Denver, State of Colorado.

My commission expires: _____

NOTARY PUBLIC
201 W. Colfax Ave., Dept. 801
Denver, CO 80202

92

# EXHIBIT 8

☐ Denver County Jail
☐ Denver City Jail

IN THE COUNTY COURT
OF THE CITY AND COUNTY OF DENVER
AND THE STATE OF COLORADO

The People of the State of
Coloradoand the City and County of
Denver
Plaintiff

**MITTIMUS**

☐ AMENDED

vs.        DPD #        PD #

**COHEN, SOLOMON**        DOB **12/24/65**

CASE NUMBER: **07CR04282**
CONTINUED TO: **08/31/07 8:30 AM**
COURTROOM: **13**
(BOND RETURN) DATE _____ TIME _____
BOND (SET AT) **$10,000.00** (REDUCED TO) _____
BOND NOT REQUIRED _____ P.R. BOND GRANTED _____
VIOLATION:

**DRUG OFFENSES**

To the Manager of Safety and Ex-Officio Sheriff of the City and County of Denver, or his duly authorized representative:

☐ RELEASE DEFENDANT on this case only.

☐ CASE DISMISSED

☐ You are hereby ordered to take the above named defendant into custody and convey said defendant to the jail of the City and County of Denver, and keep said defendant safely until a sentence of _____ days is discharged according to law, with credit for time already served.

☐ Suspend _____ days (based upon conditions noted in court file).

☐ Credit the defendant with an additional _____ days for time previously served on this case, prior to his present incarceration for this offense.

☐ This sentence is concurrent with any other sentence and may be served at any place of lawful confinement.

☐ If necessary, defendant is approved for early release under court guidelines.

☐ Stay of execution until _____.

☐ Credit _____ days for time incarcerated in another county.

☐ **DOMESTIC VIOLENCE**

THIS SECTION **FINES** ONLY:

☐ TOTAL FINE + COSTS: _____
(Exclude O.J.W. Fees)

☐ Stay of execution to: _____

☐ Jail Imposed. This sentence is for willful failure to pay fine and costs which are currently in an amount of _____, to be paid or satisfied by jail time with credit for time already served.

☐ County Court Work Program approved:
_____ hours _____ days at $10.00 per hour.

**FINES NOT SUBJECT TO JAIL TIME AND NOT INCLUDED ABOVE:**

☐ $30.00 O.J.W.

**SPECIAL PROVISIONS:**

☐ Work release:

☐ Ordered Forthwith

☐ Authorized by Court, if Approved by Sheriff

☐ Treatment / Educational Release:

☐ Ordered Forthwith

☐ Authorized by Court, if Approved by Sheriff

☐ Start SHD after _____ days in jail

☐ Sentence to be served through Saturday work program beginning _____

☐ Reconsideration date _____ courtroom _____ at _____ AM/PM

☐ Refer defendant to Jail Nurse

☐ Refer defendant for Mental Health Assessment

☐ Refer defendant for for Competency Evaluation

☐ Return defendant to the courtroom on _____ at _____ AM/PM

OTHER _____

JUDGE: _Aleene Petty White_        DATE: _8/15/2007_        CLERK'S INITIALS: _TMA_

☐ APPEARED BY
VIDEO COURT

93

# EXHIBIT 9

County Court, City and County of Denver, Colorado
City and County Building, Room 111
1437 Bannock Street
Denver, CO 80202

**Plaintiff:** THE PEOPLE OF THE STATE OF COLORADO

**Defendant: SOLOMON COHEN**
**DOB: 12/24/65**

σ    COURT USE ONLY    σ

Case Number: 07CR04082

Div.: Criminal    Ctrm: PT/13

## ARREST WARRANT

THE PEOPLE OF THE STATE OF COLORADO

TO:    Any Peace Officer authorized by law to execute arrest warrants:

WHEREAS, the District Attorney for the Second Judicial District, City and County of Denver, State of Colorado has this day filed a Complaint/Information in this Court charging **SOLOMON COHEN** with the crimes of **POSSESSION OF A CONTROLLED SUBSTANCE - SCHEDULE II - 1 GRAM OR LESS, 18-18-405(1),(2.3)(a)(I) C.R.S. (F6) 1 COUNT; and RECKLESS ENDANGERMENT, 18-3-208 C.R.S. (M3) 1 COUNT;**

AND WHEREAS, the Court has examined the attached affidavit and has satisfied itself that there is probable cause to believe that the above named offense (s) charged have been committed by the above named person; and

WHEREAS, the District Attorney for this Judicial District has requested that an arrest warrant issue for the above named person.

THEREFORE, you are hereby commanded to arrest and bring **SOLOMON COHEN** without unnecessary delay before the nearest available judge of a county or district court.

Bail fixed by the Court in the amount of $ _10,000.00_    DATED _7/19/07_

ORDERED: _____    ORDERED: _____
County Court Judge    District Court Judge

and

_____
Clerk, District Court

Original Duly Verified

State of Colorado    } ss
County of _____    }

## RETURN OF WARRANT

I hereby certify that I duly executed this warrant as commanded by arresting _____

on _____, 2007.

_____
Arresting Officer

9(c)

# EXHIBIT 10

31

| County Court, City and County of Denver, Colorado<br>City and County Building, Room 111<br>1437 Bannock Street<br>Denver, CO 80202 | Filed in County Court<br>City & County of Denver, Colorado<br><br>JUL 1 9 2007 |
|---|---|
| **Plaintiff:** THE PEOPLE OF THE STATE OF COLORADO<br><br>**Defendant: SOLOMON COHEN** | **CLERK OF COURT** |
| Mitchell R. Morrissey, Reg. No. 13784<br>District Attorney, Second Judicial District<br>By his undersigned Deputy District Attorney<br>201 West Colfax Avenue, Dept.801<br>Denver, CO 80202<br>Phone Number: 720-913-9015<br>Fax Number: 720-913-9179 | Δ    COURT USE ONLY    Δ<br>Case Number: 07KR04282<br><br>Div.: Criminal Ctrm: 13 |

### COMPLAINT AND INFORMATION

### TWO CHARGES

COUNT 1    POSSESSION OF A CONTROLLED SUBSTANCE - SCHEDULE II - 1 GRAM OR LESS, 18-18-405(1),(2.3)(a)(I) C.R.S. (F6) <82011>

COUNT 2    RECKLESS ENDANGERMENT, 18-3-208 C.R.S. (M3) <02071>

ECONOMIC CRIME UNIT

Bond Set at: $ 10,000.00    Judge: _____    Date: 7/19/07

Signature

95

02-08-05   10:17    VON-GLUCK + SIEGER                    +4112646171        1-661   S.24/38  F-181

- 18 -

and discretions etc. to one or more of the Co-Trustees which they can properly delegate in accordance with the provisions in clause 9 if and so far they think such delegation under the circumstances and in their absolute discretion advisable. Any Trustee who wishes to resign and be discharged shall give written notice of such wish to the person or persons entitled to appoint new Trustees and to his Co-Trustee or Co-Trustees (if any) and having given such notice shall be discharged at the expiration of one month from the date when such notices shall have been given or of such shorter period as the said person or persons entitled to appoint new Trustees may agree in writing provided that such discharge shall not take effect unless and until immediately after such discharge there will be (whether by virtue of continuance in office or of an appointment taking effect forthwith upon such discharge) at least one trustee.

If a Trustee hereof whether original additional or substituted shall die or being a corporation be dissolved or shall desire to resign and to be discharged from all or any of the trusts or powers hereof or shall refuse or become unfit to act therein or become incapable of acting therein then the following persons, namely

(a) the Protector or if he shall be dead (or being a corporate entity shall be dissolved) or unable or unwilling to act,

(b) the member or members of the Specified Class (if more than one then unanimously and collectively) being sui juris (but excluding the charities mentioned under

79

02-09-05   10:17     VON-GLUOR + SIEGER                     +4112540171          1-661   3.26/39   F-181

~ 20 ~

stein. The persons entitled to appoint Trustees mentioned under (a), (b) and (d) shall have the power to remove one or more of the Trustees without being obliged to give any reason for exercising this power.

12. Duty of Trustees to act with ordinary care and prudence and liability of Trustees

In carrying out their duties and exercising their powers and discretions the Trustees shall act with the honesty, prudence and diligence of the ordinary honest, prudent and diligent man of business.

13. Protector, Powers of Protector, Nomination of Successor-Protector

The Protector has all powers conferred upon him by the relevant clauses of this Trust Instrument.

The Original Protector is:

- Vogt Arthur, Austrasse 50, 9490 Vaduz.

The Original Protector as well as any Successor-Protector may by notice in writing to the Trustees

81

UZ-U9-Ub   IU:IB     VOn-GLUUR + SIEGER                    -4112b4bI/I         I-b6I   S.2//3S   F-IbI

– 21 –

   – resign as Protector

   – nominate any person or corporation entity as Protector
    to succeed him and may also revocably or irrevocably
    nominate a series of further Protectors to take office
    as Protector on the death (a in case of a corporate
    body the dissolution) or retirement of such Protector
    or further Protectors.

The protector may be resident anywhere in the world.

14. Amendment and Revocation of this Trust

The Settlor hereby divests himself of any right or power
to revoke alter or amend in any respect whatsoever this
trust and it is expressly declared that none of the
powers and discretions vested in the Trustees may be
exercised so as to confer any benefit on the Settlor and
that any resulting trust to the Settlor (if any) is ex-
cluded.

The Trustees may, however, with the consent of the Pro-
tector amend alter or vary any of the terms of this
trust.

82

- 22 -

## 15. Change of Applicable Law and Forum of Administration

The Trustees with the consent of the Protector may at any time during the trust period by any written instrument or instruments declare that the forum of administration of this trust shall be in some country other than Liechtenstein and thereafter the competent Court of this other country shall have complete jurisdiction as to all matters concerning this trust. Upon such declaration the Trustees shall together with the Protector consider the desirability or necessity of changing also the applicable law and, if considered desirable or necessary, declare with the consent of the Protector by written instrument that the Liechtenstein law shall cease to be the law applicable to this trust and that the law of the country to which the forum of administration has been moved shall henceforth be the law applicable to this trust. In the event of any such declaration being made the Trustees with the consent of the Protector may by instrument in writing make such consequential alterations or additions (if any) to this trust instrument as they may consider necessary or desirable so that the trusts powers and provisions hereof shall then (mutatis mutandis) be as valid and effective as they now are.

02-09-05    10:16    Von-GLOOK + SIEGER                    -4112546171        1-661    S.28/39    F-181

- 23 -

IN WITNESS WHEREOF the parties hereto have hereunto set their respective hands and seals the day and year first before written.


The Settlor:                                      The Trustee:

                                                  MERCOTRUST
                                                  AKTIENGESELLSCHAFT



Vaduz, May 11, 1990 VA/wog

02-09-05   10:16      VON-GLOUR + SIEGER                -4112545111          1-661   3.30/39   F-181

– 24 –

SCHEDULE I:                SPECIFIED CLASS

The members of the specified class are:

i)    the Settlor's parents

ii)   the Settlor's sisters and brothers

iii)  Charities.

SCHEDULE  II:

sfr. 100.-- (Swiss Francs one hundred)

85

02-09-05   10:19     VON-GLUOK + SIEGER               +4112546171          I-661   5.32/39   F-181

- II -

Side

11. Number of Trutees, Duty to Act Unanimously,
    Termination of Trusteeship, Appointment of
    Successor and/or Additional Trustees, Removal
    of Trustees                                              17

12. Duty of Trustees to act with ordinary
    care and prudence and liability of Trustees              20

13. Protector, Powers of Protector, Nomination
    of Successor-Protector                                   20

14. Amendment and Revocation of this Trust                   21

15. Change of Applicable Law and Forum of
    Administration                                           22

86

# EXIHIBIT 6

# FLEISHMAN & SHAPIRO P.C.

ATTORNEYS AND COUNSELORS AT LAW

1600 BROADWAY
SUITE 2600
DENVER, COLORADO 80202-4926
(303) 861-1000
FAX (303) 894-0857
www.colorado-law.net

A. CRAIG FLEISHMAN
MARLO J. GREER
KATHERINE KARAMALEGOS KUST
ALYSSA A. ROTER
STEVEN A. SHAPIRO
MELISSA J. WINTHERS

MICHAEL A. SANDSTRUM
Special Counsel

DOUGLAS TISDALE
Special Counsel

Various attorneys admitted in
Nebraska, Texas and California

December 5, 2008

Mr. Solomon B. Cohen
Inmate # L2580; Area #77309675
Aurora ICE Processing Center
1190 E. 30th Avenue
Aurora, CO   80010

Dear Mr. Cohen:

Enclosed is the original documentation which you delivered to our office in 2007.  Thank you.

Very truly yours,

FLEISHMAN & SHAPIRO P.C.

Carrie M. Huss
Secretary to A. Craig Fleishman

/cmh
Enclosure

87

Craig Fleishman Attorney
Fleishman & Shapiro
1600 Broadway
Suite 2600
Denver
CO 80202

July 21, 2007

STRICTLY PRIVATE & CONFIDENTIAL

Dear Mr Fleishman

Re: www.iuf.li

I have been referred to your law firm by Mr Barry Engel.

Please can we meet in your office as a matter of urgency.

We have more than $5million in an Assets Protection Trust and, as 98% beneficiary, I have been denied access to this money for nearly 7 years.

Dr Markus Wanger 011 423 237 5858 (fax 5859) has not sent me $7,500 on the first of this month. As a result I have no place to stay.

I am ill diagnosed with lymphatic filarial as well as ADHD. I was fortunate to receive a continuation of ADDERRAL from psychiatrist Dr Ronald Rabin.

Please can you call Dr Wanger to complain and get me back into the corp apartments at the MAGNOLIA HOTEL?

Or can you give me a referral to the Jewish Federation/ social services?

My cellphone: (303) 641- 9207.

Can I please come to your office on Monday?

I have deteriorated a great deal since I was last at Engel & Reiman last Monday.

I enclose a copy of the Trust Deed.

Sincerely


Solomon Ben- Tov COHEN MA (Cantab)
SSN 059- 84- 6336

# EXHIBIT 7

UZ-09-05   10:13      VON-GLUUR + SIEGER                      -4112545111              1-001   S.10/39   P-161

- 4 -

(c) "the Appointed Day" means the day on which

- the trust period of eighty years from the execution of this Trust Instrument shall expire,

- any prolonged trust period in exercise of the power vested in the Trustees by clause 2 shall expire,

- this trust is terminated in exercise of the powers vested in the Trustees by clause 2:

(d) "the Trust Fund" means and includes:

    (i)    the said assets specified in the Second Schedule hereto;

    (ii)    all assets paid or transferred to or into the control of and accepted by the Trustees as additions to the Trust Fund: and

    (iii)    the assets from time to time representing the said assets specified in the Second Schedule hereto and the said additions to the Trust Fund or any part or parts thereof respectively.

(e) "The Protector" means the Original Protector or other the person for the time being being the Protector of this trust.

67

UZ-U9-Ub   IU:I4    VON-GLUUR + SIEGER                              +4IIZ64UIII    I-bbI   3.II/39   F-IbI

– 5 –

## 4. Trusts, Power of Appointment, Discretions

(a) The Trustees shall stand possessed of the Trust Fund and the income thereof upon trust for all or such one or more exclusively of the others or other of the members of the Specified Class if more than one in such shares and either absolutely or at such age or time or respective ages or times upon and with such limitations, conditions and restrictions and such trusts and powers (including discretionary trusts and powers over income and capital whether similar to the discretionary trusts and powers herein contained or otherwise) and with such provisions (including provisions for maintenance and advancement and the accumulation of income and provisions for the investment and management of any nature whatsoever and provisions for the appointment of separate trustees of any appointed fund) and generally in such manner as the Trustees shall with the consent of the Protector in their absolute discretion from time to time by written instrument revocable or irrevocable appoint provided that:

(i)  no such appointment shall invalidate any payment or application of capital or income previously made under the trusts or powers herein elsewhere contained, and

(ii) every appointment shall be made and every interest limited thereunder shall vest in interest (if at all) not later than the Appointed Day and no appointment shall be revoked later than the Appointed Day.

68

- 6 -

(b) In default of and subject to and until any or every exercise of the powers conferred on the Trustees by the preceding clause hereof the Trustees shall until the Appointed Day hold the income of the Trust Fund upon the trusts and with and subject to the powers and provisions following namely:

(i) during the trust period the Trustees shall have power to pay or apply the whole or any part or parts of such income as it arises to or for the maintenance and support or otherwise for the benefit (which term is used in its widest possible sense and shall not be construed so as to contain any limitation) of all or such one or more exclusively of the others or other of the members of the Specified Class, if more than one in such shares and in such manner as the Trustees shall in their absolute discretion without being liable to account for the exercise of such discretion think fit;

(ii) subject to any and every exercise of the last mentioned power the Trustees shall during the trust period accumulate the whole or the balance (as the case may be) of the said income by investing the same in any manner hereby authorised and shall hold the accumulations so made as an accretion to the capital of the Trust Fund for all purposes.

69

- 7 -

(c) In default of and subject to any or every exercise of the said powers conferred on the Trustees by the preceding clause hereof the Trustees shall stand possessed of the Trust Fund on the Appointed Day upon trust for such persons as shall be then living and members of the Specified Class (excluding the Charities mentioned under point 1 of the First Schedule) if more than one in equal shares per capita absolutely.

5. Power to appoint Additional Beneficiaries and to exclude Beneficiaries

The Trustees may from time to time and at any time before the Appointed Day by any written instrument or instruments:

(a) with the consent of the Protector declare that any person or class or description of person shall cease to be a member of the Specified Class and thereupon such person or class or description of persons shall cease to be a member or members of the Specified

70

UZ-UY-Ub   IU:I4   VON-GLUUK + SIEGER                    -4I12o4bI/I        I-bbI  S.I4/39  F-IbI

- 8 -

Class in the same manner as if he/she or they had originally been expressly excluded therefrom but without prejudice to any previous payment of capital or income to such person or any member of such class or description of person or application thereof for his/her or their benefit provided that the removal of any such person or class or description of person as aforesaid shall not prejudice modify or affect any appointment of capital or income then already made and provided also that the removal of any such person or class or descripiton of person as aforesaid shall not prejudice modify or affect the trust in favour of beneficiaries contained in sub-clause (d) of the last preceding clause hereof;

(b) with the consent of the Protector declare that any person or persons nominated by the Trustees shall thenceforth be included in the Specified Class and thereupon such person or persons shall become a member or members of the Specified Class for all the purposes hereof provided that any addition of any such person or persons to the Specified Class shall not prejudice modify or affect any appointment of capital or income then already made.

6. Release of Powers

The Trustees may from time to time and at any time before the Appointed Day by any written instrument or instru-

71

UZ-UB-Ub   IU:Ib      Von-GLUUK + SIEGER                    -4112b461I1         I-861   S.I5/39   F-161

– 9 –

ments with the consent of the Protector wholly or
partially release or restrict all or any of the powers
and discretions conferred upon them (including this
present power) by the preceding clauses 4 and 5 whether
in relation to the whole Trust Fund or any part or parts
thereof or the income thereof respectively.

7. Power of Trustees in relation to the Management of the Trust Fund

The Trustees shall have power as to so much of the Trust
Fund as shall at any time consist of money to retain the
same or any part thereof uninvested for so long as they
may think fit or at any time or times in their discretion
to invest the same or any part thereof in any manner
hereinafter authorised as to property other than money to
allow the same or any part thereof to remain in its actu-
al condition or state of investment for so long as they
may think fit or at any time or times in their discretion
to sell, call in, or convert into money the same or any
part thereof.

The Trustees shall not be bound (in exercising the powers
conferred on them by the last foregoing Class or other-
wise) to have regard to any statutory or other require-
ment as to diversification of investments belonging to a
trust nor shall any beneficiary hereunder be entitled to
compel the sale or other realisation of any property not
producing income or in investment of any part of the
Trust Fund in property producing income.

72

UZ-U9-U5   IU:I5   VOn-GLUUK + SIEGER                    +4112546171              I-551   5.16/58   F-181

- 10 -

Money forming part of the Trust Fund may be invested in
the purchase or other acquisition of any property of
whatsoever nature and wheresoever situate and whether or
not subject to incumbrances or involving liability of any
kind (including the lending or deposit of money with or
without any personal or other security to any person and
upon any terms and conditions whatsoever) to the intent
that the Trustees shall have the same full free and unre-
stricted powers of investment and of changing investments
as if they were absolutely entitled to the Trust Fund be-
neficially and the generality of this provision shall not
in any way be limited or restricted or read down by refe-
rence to or implication from any of the more specific
powers and provisions herein contained.

Without prejudice to the generality of the foregoing and
without prejudice to any powers conferred by law the
Trustees shall have the following additional powers:

(a) to apply and invest any monies at any time forming
    part of the Trust Fund in any investments and even if
    of a wasting reversionary or speculative nature and
    whether involving liabilities or not or upon personal
    credit with or without security and upon such terms
    and conditions as the Trustees shall think fit and
    either alone or jointly or in common or in
    partnership with any other including without
    diminishing the generality of the foregoing the
    subscription for the taking up an allotment and the
    purchase of any shares stocks bonds mortgages
    debentures obligations or securities of any
    government authority or company incorporated in any
part of the world and the taking

02-09-05  10:15    VON-GLOOR + STEGER    =4112646171    1-661  S.11/39  P-181

- 11 -

and the purchase of the whole of or any part or
share or interest (including a minority part or share
or interest) in any business or partnership and the
goodwill and assets thereof and the purchase of any
real or personal property wheresoever situate and to
exercise all rights and privileges and perform all
duties and obligations appertaining or incidental
thereto and to make or purchase any such investments
for cash or in consideration of any annuity or other-
wise and upon terms and conditions as the Trustees
shall think fit and to make or purchase any such in-
vestments for a sum greater than the amount of the
Trust Fund for the time being and to agree to pay for
any such investments wholly or in part from any fu-
ture monies which may come into its hands including
dividends profits interest or other income paid or
payable in respect of any such investments;

(b) to sell or convert into money all or any of the pro-
perty comprising the Trust Fund which is not in money
to invest any of the monies in the Trust Fund inclu-
ding any monies arising from such sale and conversion
in any of the investments herein authorized and to
vary or transpose any investments into or for any
other or others of any nature whatsoever and to vary
the terms of property comprised in any security;

(c) to advance and lend monies to and to borrow and raise
monies from and secure by mortgage or otherwise how-
soever (including a floating charge) over all or any
of the assets comprising the Trust Fund the payment
of money to any persons (including a member of the
Appointed Class) firms companies corporation or

74

UZ-UY-Ub   IU:Ib    YOR-GLUUR + SIEGER                        *4112546171           I-bbI   S.Ib/39   F-I8I

- 12 -

government or municipal bodies and upon such terms
with or without security or interest as the Trustees
shall think fit;

(d) to give any guarantee and to charge all or any of the
assets comprising the Trust Fund to secure perfor-
mance of such guarantee for payment of money or the
performance of any contract obligation or undertaking
by any person, firm, company, corporation or associa-
tion;

(e) to hold use purchase construct demolish maintain re-
pair renovate reconstruct develop improve sell trans-
fer convey surrender let lease exchange take and
grant options or rights alienate mortgage charge
pledge reconvey release or discharge or otherwise
deal with any real or personal property;

(f) to allow the beneficiaries or any of them to occupy
have custody of or use any immovable property or
chattels for the time being forming part of the Trust
Fund on such terms and conditions as to inventories
repair replacement insurance outgoings or otherwise
at all as the Trustees shall think fit and so that no
Trustees shall be liable for any loss or damage which
may occur to any property so forming part of the
Trust Fund during or by reason of any such occupation
custody or use except insofar as such or damage shall
be occasioned by the conscious and wilful default or
neglect of such Trustees:

(g) to purchase acquire or effect any reversionary or de-
ferred property or rights of any description or any
life or live-en-dowment or sinkingfund or terms or

75

- 13 -

other policy or policies of insurance of whatsoever nature and at or subject to any premium or premiums whether single or payable periodically and with or subject to any options rights benefits conditions or provisions whatsoever and the Trustees shall have power to pay out of the income or capital of the Trust Fund as the Trustees shall think fit all sums payable from time to time for premiums or otherwise for the effecting or maintenance of such policy or policies or for the exercise or enjoyment of any option right or benefit thereunder and any surrender of any such policy or policies shall for all the purposes of this trust be deemed to be a sale thereof;

(h) to pay all income tax or other tax or duties payable hereon or in respect of the trusts hereby created;

(i) to pay calls on any share acquired by the Trustees or to permit any such shares to be forfeited, to exercise all or any powers and rights contained in the Articles of Association of any Company, to vote at any meeting of any Company or the directors, thereof, and to agree to or concur in any amendment or variation of the Articles of Association of any Company or any scheme or arrangement or agreement among shareholders or stockholders of any such company notwithstanding that such concurrence may vary increase or diminish the rights or obligations of the Trustees as members or directors of and in such Company:

(j) to establish conduct acquire carry on subsidise assist finance contribute to arrange or take part in takeover wholly or in part or be concerned engaged

76

- 14 -

or interested whether directly or indirectly in any business trade industry occupation transaction undertaking enterprise or pursuit whatsoever whether manufacturing trading industrial financial commercial or otherwise and to undertake and carry on all such business operations and transactions as an individual may lawfully undertake and carry on:

(k) any property subject to the trust hereof may at any time in the discretion of the Trustees be or remain deposited with or vested in any person (whether or not being one or more of the Trustees) in any part of the world as nominee or nominees for the Trustees and the Trustees may delegate to such person or persons such of the administrative trusts powers and discretions hereby or by law vested in the Trustees as the Trustees may in their discretion think fit without being responsible for loss:

(l) at any time or times to enter into any compromise or arrangement with respect to all or any of their rights as debenture holders, debenture stockholders, creditors, stockholders or shareholders of or participators in any company or association or partnership (whether in connection with a scheme of reconstruction or amalgamation or otherwise) and to accept in or towards satisfaction of all or any of such rights such consideration as they shall in their discretion think fit;

(m) in any case where the Trustees are hereby or by any appointment made hereunder or by law directed or em-

77

- 17 -

The Trustees are entitled to such remuneration as at or prior to their appointment may have been agreed upon in writing between the Trustees and the person or persons making such appointment.

Notwithstanding the foregoing any trustee engaged in any profession or business shall be entitled to be paid all usual professional or proper charges for business trans-acted time expended and acts done by him or his firm in connection with the trusts powers and provisions hereof including acts which a trustee not being in any profession or business could have done personally.

The rights of the Trustees to be reimbursed and properly remunerated are secured by a charge on the whole of the Trust Property.

11. Number of Trustees, Duty to Act Unanimously, Termination of Trusteeship, Appointment of Successor and/or Additional Trustees, Removal of Trustees

The minimum number of Trustees of this trust shall be one and the maximum number shall be five Trustees.

All of the Trustees are required to act unanimously. Not-withstanding the foregoing the Trustees are, however, entitled to delegate all business acts exercise of powers

that he has an interest in the assets of the Fund on the basis that any claim he may have appears to be against Cohen personally.

## The Liquidators' Position

59   The Liquidators' views on the questions of whether they have been properly appointed, and to whom they should distribute the Fund's assets, which they have arrived at with the benefit of the advice of their attorneys Maples and Calder, are set out below.

## Validity of the Liquidators' appointment

60   The last audited financial statements of the Fund, and the Prospectus, both indicate that the Management Shares were issued to Gazelle Bermuda. The Liquidators have made extensive enquiries of the Fund's former administrators, of Gazelle Bermuda's administrators, and of the trustees of the trusts which appear to own Gazelle Bermuda and the Investment Shares. During those enquiries no one other than Cohen has disputed that Gazelle Bermuda is the holder of the Management Shares, and no substantive evidence whatsoever has been advanced in support of that claim. Cohen has subsequently retracted his initial claim to be the holder of the Management Shares and accepted that they are or were at the relevant time held by Gazelle Bermuda.

61   Accordingly, in the Liquidators' view there is nothing to suggest that the Management Shares were held by anyone other than Gazelle Bermuda at the date of the Liquidators' purported appointment, and the Liquidators consider that the evidence that they have been properly appointed is compelling.

## Distributions in respect of the Investment Shares

62   It is undisputed that Mercotrust was until recently the holder of the Investment Shares.

63   Wanger is now trustee of the Diaz Trust. His appointment has been confirmed by him, Mercotrust, Cohen and Cohen's lawyer. Accordingly this also appears to be undisputed.

64   The Liquidators have now consented to the transfer of the Investment Shares to Wanger and the transfer was effected on 14 October 2005. Mercotrust has specifically confirmed

16

that it wishes to transfer the Investment Shares to Wanger and that any distributions from the Fund in respect of the Investment Shares should be made to Wanger or as he directs.

65    Cohen's various complaints have been made in his capacity as beneficiary of the Diaz Trust of which Wanger is, and Mercotrust were previously, the trustee. However, Cohen does not himself hold any of the Investment Shares, even if he may ultimately be beneficially entitled to a proportion of the assets of the Fund attributable to the Investment Shares.

66    None of Cohen's complaints have been substantiated.

67    The Articles provide that the Fund shall not recognize any share as being held on trust.

68    Neither the Fund nor the Liquidators are party to the trust deed for the Diaz Trust, and as such questions of the propriety or otherwise of actions taken by the trustees of the Diaz Trust are matter for the beneficiaries and the trustees between them, rather than the Fund or the Liquidators.

69    Accordingly, it is the Liquidators' view, on advice, that they are not in a position to make a distribution in respect of the Investment Shares to anyone other than the holder of the legal title of those shares, or to such person as the holder of the shares directs.

**The Liquidators' Application for Directions**

70    Although unsubstantiated, the allegations made by Cohen are of an extremely serious nature. They include allegations of fraud and potentially criminal conduct against parties in a fiduciary relationship to Cohen. It also appears that Cohen has a number of ongoing personal difficulties including mental health problems and problems with the authorities in at least the U.S. and Liechtenstein.

71    Given Cohen's allegations and in light of his apparent difficult personal circumstances, the Liquidators are concerned to ensure that all parties who have a potential interest in the proposed distributions from the Fund's estate have the opportunity to make their views known and have their interests protected in an open and transparent manner. Accordingly, the Liquidators are making this application on notice of this application to

17

Cohen (through his attorneys, Feirabend and Myerson), Wanger, Mercotrust and Continental Management. The Liquidators therefore respectfully request directions from this Honourable Court as to the validity of their appointment and as to whom they should distribute the Fund's assets.

SWORN to at                   )

George Town, Grand Cayman    )

this [23] day of [   ] 2005        )

before me                       )       J. I. NICHOLAS FREELAND

_____

Notary Public

THIS Affidavit is filed by Maples and Calder, attorneys-at-law for the Liquidators whose address for service is Ugland House, South Church Street, P.O. Box 309GT, George Town, Grand Cayman. (Ref: BDM)

BDM/613598/1495273/v4

# EXIHIBIT 4

**From:** Dudley Cottingham <drc@cml.bm>
**To:** Cohensb1@aol.com
**Cc:** jayne.mitten@dla.ky; sfeierabend@gloor-sieger.ch
**Subject:** Re: OGIERS
**Date:** Mon, 26 Feb 2007 10:23 pm

---

Solomon

I tied unsuccessfully to reach you by phone today because I had the following e mail from Chris Russell:

"The question of the continuation or discharge of the Court Appointed Guardianship came before the Cayman Court this morning. The Court has decided that it has done all that it can to assist Solomon and that the Guardianship should therefore be discharged. Accordingly I am no longer Solomon's Guardian here in Cayman, and my role is at an end."

"The Court also made other orders concerning the funds held here in Cayman. Diamond Law Associates will no doubt be contacting Solomon about the effects of these orders, but in short, the requirement that the funds be retained in Cayman will no longer apply. The place where the funds are to be held is a matter for the trustee of the Corinne Diaz Trust to decide in accordance with his duties as trustee. The Court also expressed the view that the financial protection of Solomon and the responsibility for ensuring that trust funds are properly used by Solomon was a matter for his trustee and not the Court."

As I understand it this will mean that the Cayman court will no longer be affording you any protection and Dr Wanger, as your trustee, will decide what should be done with the trust funds.

I therefore suggest you instruct Stefan to represent you and ensure your interests are protected.

As you know I have no legal standing in connection with the Leitchenstein trust and I am unable to answer the questions you pose.

Miles Howarth is periodically sending me faxes and registered letters to which I have not responded. Should I send these to Stefan to respond to?

Dudley


Cohensb1@aol.com

02/26/2007 08:40 PM

To drc@cml.bm

CC jayne.mitten@dla.ky, sfeierabend@gloor-sieger.ch
Subject OGIERS


Dudley

I cannot work with Christopher Russell.

Nothing personal- but I signed a FEE AGREEMENT and he did not represent me.

Then I was forced to flee from my home because of threat end use of LEGAL GUARDIANSHIP powers.

62

Let me start over with a lawyer in Cayman or MIAMI in a fresh relationship.

Why did David Walker refuse to pay KLEINFELD? Surely we would have ALL been working by agreement with someone I could talk things over with at their offices.

I want someone I can trust to put forward my case.

What option will I have if a US attorney says I must bring this into the US Court system.

Is the claim from Miles going to be sqaushed once and for all and, I cannot see Dr Wanger treating we as wonderfully as Dr Keicher did. II want to re- group with Corinne who is alone and our family in Elm Drive, Beverly Hills. One of the cheaper house close to the synagogue is affordable at $1Million.

The risk of Earthquake which does not worry me- keeps real estate prices at good prices.

:)

Solomon

AOL now offers free email to everyone.  Find out more about what's free from AOL at **AOL.com**.

---

CONFIDENTIALITY CAUTION AND DISCLAIMER

This email and any attachments may contain privileged and/or confidential information and are intended solely for the use of the individual or entity to which they are addressed. This email has not been encrypted and therefore privacy cannot be ensured. If you are not the intended recipient and have received this email in error, please advise the sender immediately by return email. Any distribution, use, or copying of this email or the information it contains by anyone other than the intended recipient is strictly prohibited.

This e-mail was checked for spam and viruses by the QuoVadis Sweeper Service.

For more information visit the website of QuoVadis Limited:

http://www.quovadis.bm/

---

68

# EXIHIBIT 5

THIS TRUST (TREUHAENDERSCHAFT) is made the day of May 11, 1990 of

BETWEEN

CORINNE DIAZ
18 Rue de la Fontaine Vieille

PASSA 66300 FRANCE

(hereinafter called "the Settlor")

of the one part

and

MERCOTRUST AKTIENGESELLSCHAFT, Aeulestrasse 5, Vaduz
(hereinafter called "the Original Trustee")

of the other part

This Trust (Treuhänderschaft) may be referred to as the

whereas: CORINNE DIAZ TRUST SETTLEMENT

(A) The Settlor has prior to the execution hereof transferred to the Original Trustee the assets specified in the Second Schedule hereto to be held upon the trusts and with and subject to the powers declared by this trust;

(B) The Settlor or any other person may hereafter pay or transfer further assets to or into the control of the Original Trustee or other Trustee or Trustees for the time being hereof to be held upon the same trusts and with subject to the same powers;

64

- 2 -

now this deed witnesseth as follows:

1. <u>Applicable Law, Jurisdiction, Forum of Administration</u>

The trust law of the Principality of Liechtenstein as contained in the Personen und Gesellschaftsrecht (statute no. 4 dated January 20th, 1926), article 897 to 932 shall be applicable to this trust.

It is expressly declared that the Courts of the Principality of Liechtenstein shall have complete jurisdiction as to all matters arising under this trust.

The forum of administration of this trust shall be in the Principality of Liechtenstein.

The Original Trustee or the Trustee or Trustees for the time being may register this trust with the Oeffentlichkeitsregister of the Principality of Liechtenstein, if they shall consider such proceeding as in the interest of the trust property and all the beneficiaries.

2. <u>Duration of Trust</u>

The period of duration applicable to this trust shall be the period of eighty years from the date of the execution of this Trust Instrument.

- 3 -

Notwithstanding the foregoing the Trustees have the power

- to terminate this trust by means of a written instrument at any earlier date,

- to prolong the period of duration of this trust for any period of time they shall think fit,

if they in their absolute and unfettered discretion shall consider it in the best interest of all the beneficiaries and the trust property.

## 3. Definitions

In this Trust Instrument and the Schedules hereto the following expressions shall have the following meanings that is to say:

(a) "the Trustees" means the Original Trustee or other the trustees or trustee for the time being of this trust;

(b) subject to any and every exercise of the powers conferred by clause 5 hereof "the Specified Class" has the meaning attributed to it in the First Schedule hereto;

66

Applicant
J. I. Nicholas Freeland
First Affidavit
Sworn [23rd December] 2005
Exhibits "[   ]"

## IN THE GRAND COURT OF THE CAYMAN ISLANDS

CAUSE NO        OF 2005

## IN THE MATTER OF THE COMPANIES LAW (2004) REVISION

## AND IN THE MATTER OF THE GAZELLE GLOBAL FUND LIMITED (IN VOLUNTARY LIQUIDATION)



## FIRST AFFIDAVIT OF NICHOLAS FREELAND

I, J. I. Nicholas Freeland of PricewaterhouseCoopers, PO Box 219GT, Strathvale House, North Church Street, George Town, Grand Cayman, Cayman Islands **MAKE OATH AND SAY** as follows:

1       I am a chartered accountant and Senior Partner of PricewaterhouseCoopers Cayman Islands.

2       On 30 October 2001 I was appointed, together with Christopher D. Johnson, the former Senior Partner of PricewaterhouseCoopers, as joint liquidator (together the "Liquidators") of The Gazelle Global Fund Limited (the "Fund").  I am duly authorized by Mr Johnson to make this affidavit on behalf of the Liquidators.

3       I make this Affidavit in support of the Liquidator's applications for directions (i) regarding the validity of their appointment and (ii) to confirm to whom they should distribute the Fund's net assets.

BDM/613598/1495273/v4

45

4    The facts and matters deposed to in this Affidavit are derived either from my own personal knowledge, in which case I confirm that they are true, or from work undertaken by the Liquidators' staff, in which case I confirm that they are true to the best of my knowledge and belief.

## Summary

5    There are two issues facing the Liquidators. Firstly, whether they have been properly appointed, and secondly, to whom should the net assets of the Fund be properly distributed. Those assets consist of cash in the amount of approximately GBP2,823,000 held on fixed deposit with the Bank of Bermuda, Hamilton, Bermuda. These issues have arisen as a result of allegations made by a beneficiary of the Corinne Diaz Trust (Lichtenstein) (the "Diaz Trust"), the Diaz Trust being the entity with the ultimate beneficial ownership of all but a small percentage of the Fund's investment shares.

## Structure of the Fund

6    The Fund was an open ended exempted company incorporated in the Cayman Islands on 14 February 1994. There are now produced and shown to me marked "NF-1" and "NF-2" true copies of the articles of association of the Fund (the "Articles") and of the Fund's prospectus dated 14 June 1994 (the "Prospectus").

7    The Articles show that the Fund's authorized share capital was divided into two categories, being 100 management shares of US$1.00 each which carried voting rights but no right to share in the profits or assets of the Fund, and 10,000 investment shares of US$1.00 each which were non-voting redeemable shares. The Prospectus shows that the investment shares were themselves divided into different series each of which entitled the holder to share in the profits of a different set of assets of the Fund.

8    The Fund was managed by Gazelle Fund Managers (Bermuda) Limited ("Gazelle Bermuda"), a Bermuda incorporated company which, subject to the dispute to which I refer below, held the issued management shares in the Fund (the "Management Shares"). Gazelle Bermuda was struck off the companies register in Bermuda on 23 September 2002.

BDM/613598/1495273/v4

3

9  The administrator of the Fund was Hemisphere Management Limited in Bermuda ("Hemisphere") and its registered office was at Hemisphere Management Limited in the Cayman Islands.

10  As at the date of the Liquidators' appointment, the investment shares in issue totaled 2512 Of these, 12 were registered in the name of a Mr Michael Schroter ("Schroter"). The remaining 2500 were registered in the name of Mercotrust Aktiengesellschaft, a Lichtenstein trust management company ("Mercotrust" and the "Investment Shares").

11  The Liquidators have been informed by Mercotrust that Mercotrust held the Investment Shares on trust for the Diaz Trust and they were the trustee until July 2004. The current trustee or successor trustee of the Diaz Trust is a Dr Markus Wanger ("Wanger") of Industrie-und Finanzkontor which the Liquidators understand to be a professional services firm also based in Lichtenstein.

12  Wanger has advised the Liquidators that the 98% beneficiary of the Diaz Trust is a Mr. Solomon Cohen ("Cohen").

13  Mr. Cohen claims he was the investment manager of the Fund until 30 June 2000, however, as discussed further below, it appears that Cohen previously acted as the investment manager of Gazelle Bermuda and not the Fund through his company C.K. Partners Inc. during the period 1994 to 2000. As previously mentioned, Gazelle Bermuda was the manager of the Fund.

14  The Liquidators understand that Gazelle Bermuda was owned by a related trust, the Corinne Diaz Trust (Bermuda) (the "Bermuda Trust") of which Continental Management Limited ("Continental") in Bermuda (or principals/employees of Continental) were the trustee. It is understood that Cohen was the, or a, beneficiary of the Bermuda Trust. The Liquidators also understand that all the assets of the Bermuda Trust have been distributed to the beneficiaries.

**The Liquidators' Appointment**

4

15  The Liquidators were purportedly appointed on 30 October 2001 by Gazelle Bermuda as holder of the Management Shares. There are now produced and shown to me marked "NF-3" copies of a resolution of the board of directors of the Fund recommending the appointment of the Liquidators, and a written resolution of Gazelle Bermuda resolving that the Fund be wound up and the Liquidators appointed, both dated 30 October 2001. The written resolution refers to Gazelle Bermuda as the "sole shareholder" of the Fund, although I consider that this is simply an error. Subject to the dispute referred to below Gazelle Bermuda was the sole voting shareholder of the Fund, pursuant to the Management Shares, and as such I believe and am advised that the written resolution was validly passed.

16  Subsequent to the passing of the written resolution, Cohen contacted the Liquidators to claim that he, and not Gazelle Bermuda, was the holder of the Management Shares.

17  There are now produced and shown to me marked "NF-4" copies of correspondence to which I refer in the remainder of this Affidavit. Page references in this Affidavit are to pages of exhibit "NF-4".

18  At pages 1 to 3 is a letter from Cohen to PricewaterhouseCoopers ("PwC") in the Cayman Islands dated 21 August 2002 in which Cohen claims to be entitled to the Management Shares and also asserts that he is the major beneficiary of The Corinne Diaz Trust (which the Liquidators understand to mean the Lichtenstein based trust defined above as the Diaz Trust) which has been subsequently verified by Wanger. The 21 August 2001 letter also makes a number of allegations of wrongdoing against various parties to which I refer in more detail below.

19  At pages 4 to 5 are letters from Cohen to PwC in the Cayman Islands and in Bermuda both dated 27 August 2002 in the latter of which Cohen repeats the assertion that he owns the Management Shares. In that letter Cohen also notes that he is seeking legal advice in Grand Cayman, Bermuda and the U.S. on this and related matters. However, the Liquidators have never been contacted by lawyers acting for Cohen in connection with the assertion that he owns the Management Shares and are not aware of any lawyers being instructed by Cohen to act on this particular matter. The Liquidators have,

BDM/613598/1495273/v4

5

however, recently been in contact with Stephan Feierabend ("Feierabend") at Gloor & Sieger the Swiss lawyers, who represent the beneficiaries of the Diaz Trust of which Cohen is the major beneficiary, regarding the change in trustee of the Diaz Trust and regarding the matters the subject of this application. The Liquidators have also been in contact with Cohen's U.S. attorney, Mr Jay Myerson of Myerson Law Office, Virginia, however, this has not been in connection with Cohen's claim with respect to the ownership of the management shares but in connection with the making of an interim distribution from the Fund directly to Cohen to assist with personal matters in which Cohen is involved before the Courts in Virginia and Washington DC.

20    The Liquidators investigated at great length whether Cohen's assertions regarding the Management Shares were correct. The Liquidators have been unable to locate a copy of the management share register, a copy of the actual management share certificates, or minutes of any meeting authorising the issue of the management shares other than the one share purportedly issued to Gazelle Bermuda by virtue of the board resolution on 30 October 2001 (a copy of which is produced and shown to me marked "NF-3").

21    However, the Fund's prospectus (the "Prospectus") states clearly at page 18 under the Capital Structure section that the Management Shares were issued to Gazelle Bermuda, and the last set of audited financial statements of the Fund dated 31 December 1997 (a copy of which is produced and shown to me marked "NF-5") also confirm that the Management Shares were issued to Gazelle Bermuda. Even if the original Management Shares had not been issued, a share was purportedly issued to Gazelle Bermuda for the purpose of facilitating the liquidation of the Fund by the board resolution dated 30 October 2001, and this can only have been a management share if it was to carry the right to vote to wind up the Fund. If, however, all 100 of the authorized Management Shares had already been issued before 30 October 2001 then it would appear that the resolution to issue a further such share can have been of no effect.

22    Cohen has never produced any evidence to support his claim that he owned or was entitled to the Management Shares at the time the Liquidators were appointed. Furthermore, in a conversation on 16 April 2004 between Mr Ross Harris, a former

49

6

PwC Cayman Islands Liquidators staff member, and Mr Jonathan Howes of Continental (the administrators of the Bermuda Trust and of Gazelle Bermuda), Mr Howes stated that he thought that the Management Shares had never been issued and that Cohen's previous correspondence had been designed to stall a distribution of the Fund's assets in light of Cohen's concerns about possible misappropriation of those assets should the Liquidators distribute the assets to the trustee in Lichtenstein. A copy of Ross Harris' attendance note of that telephone conversation is at page 6.

23    In subsequent conversations with Ross Harris on 8 June 2004 and again on 29 July 2004 Cohen retracted his previous allegations and explained that the Management Shares were in fact owned by Gazelle Bermuda. Copies of attendance notes of those conversations are at pages 7 to 9.

24    The Liquidators' therefore believe that they were properly appointed by Gazelle Bermuda.

## Cohen's Claim to be a Creditor of the Fund

25    On 3 August 2004 Cohen contacted PricewaterhouseCoopers in the Cayman Islands to state that he wished to submit a claim from CK Partners Inc. for its investment advisory fees for the year 2000. The following day, on 4 August 2004, Cohen confirmed this in a letter to Ross Harris of PricewaterhouseCoopers. Copies of the email of 3 August 2004 and the subsequent letter are at pages 10 to 12.

26    The Liquidators have reviewed the records in their possession regarding this claim and are of the opinion that the Fund does not owe any monies to CK Partners Inc. for the following reasons.

26.1    The Prospectus provides that the Fund is to pay a management fee to Gazelle Bermuda which, in return, was responsible for payment of investment advisory fees, amongst other things. Gazelle Bermuda's unaudited statement of income and retained earnings for the year ended 31 December 2001 shows an expense of US$37,742 being incurred for "investment advisors fee", which supports this.

BDM/613598/1495273/v4

26.2    The Fund's most recent management accounts in the Liquidators' possession dated 30 June 2000 (a copy of which is attached marked "NF-6") show only US$100 in liabilities, and prepaid expenses of US$22,558.33. According to the management accounts there is no fee owing to either Gazelle Bermuda or to CK Partners Inc as at 30 June 2000.

26.3    The declaration of solvency signed by the directors of the Fund dated 21 November 2001 (a copy of which is attached marked "NF-7") does not show any amount owing to CK Partners Inc for investment advisory fees.

26.4    The Fund's bank statements in the Liquidators' possession for the period 1999 to 2001 show management fees being paid to Gazelle Bermuda, but do not show any payments to CK Partners Inc during that period.

26.5    Cohen has previously been asked by the Liquidators to substantiate his claim by providing proof such as the investment advisory agreement with CK Partners Inc. In a letter dated 4 August 2004 (at page 13) Cohen acknowledged that he could not locate a copy of the agreement or any other records to verify CK Partners Inc's claim.

**Distribution from the Fund**

27    As described above, at the time of the Liquidators' appointment, legal title to the majority holding of investment shares was vested in Mercotrust, as trustee of the Diaz Trust. On 19 April 2002 a preliminary distribution of GBP70,028 was made to Mercotrust in respect of the Investment Shares.

28    After Cohen contacted the Liquidators to notify them of his (subsequently retracted) claim to own the Management Shares, and his concerns regarding the management of the trusts of which he claims to be a beneficiary, the Liquidators ceased making any distributions from the Fund to shareholders pending resolution of those issues.

29    As a result of this delay Mercotrust wrote to the Liquidators on a number of occasions requesting that the assets attributable to the Investment Shares be distributed to them.

Copies of those letters are at pages 14 to 25, together with the Liquidators' responses confirming that the Liquidators are investigating the assertions made by Cohen and are not in a position to distribute funds to the shareholders until that investigation has been resolved. The letter from Mercotrust dated 12 January 2004 attached copies of share certificates in the name of Mercotrust in respect of all of the Investment Shares.

30      On 8 June 2004 Cohen called Ross Harris to confirm that Cohen and his sister were in the process of appointing new trustees to the Diaz Trust. A copy of Ross Harris' note of that conversation is at page 26.

31      On 28 July 2004 the Liquidators received a letter from Wanger, informing the Liquidators that he had been appointed as trustee of the Diaz Trust in place of Mercotrust. A copy of that letter is at page 27.

32      On 29 July 2004 Cohen called Ross Harris to confirm that he (Cohen) had appointed Wanger as trustee of the Diaz Trust in Mercotrust's place and that Mercotrust had resigned on 21 July 2004. On the same date Ross Harris spoke to Feierabend, who confirmed this change. A copy of Ross Harris' note of those conversations is at pages 28 to 29.

33      On 29 July 2004 Feierabend wrote to Ross Harris to confirm their telephone conversation, enclosing an excerpt of the commercial register of Liechtenstein purporting to confirm the change of trustee (pages 30 to 31).

34      Ross Harris wrote to Mercotrust on 3 August 2004 (page 32) seeking confirmation that Mercotrust had been replaced as trustee of the Diaz Trust by Wanger, which confirmation was received from Mercotrust in an undated letter received on 5 August 2004 (page 33).

35      Between August 2004 and June 2005 the Liquidators continued to attempt to locate the management shares, without success.

36      On 9 September 2005, the Liquidators wrote to Mercotrust, to Wanger, and to Cohen, explaining the current position, and notifying them of the Liquidators' intention to apply to Court for directions. A copy of the letter is at pages 34 to 35. On 20 September 2005,

52

9

On 20 September 2005 (page 36) Mercotrust wrote to the Liquidators again confirming that Wanger is the successor trustee of the Diaz Trust. A copy of that letter is at page 36. On 26 September 2005 the Liquidators wrote to Mercotrust asking for confirmation that Mercotrust wishes to transfer legal title to its shares in the Fund to Wanger and/or that Mercotrust wishes the Liquidators to make any distribution in respect of those shares to Wanger or as he directs. On 26 September 2005 Mercotrust sent a faxed copy of that same letter back marked up to indicate their confirmation of this. A copy of that letter, as marked up, is at page 37.

37    Wanger returned the original Investment Share certificates to the Liquidators on 4 October 2005. On 14 October 2005 new share certificates were issued by the Liquidators in the name of Wanger and the Fund's records were amended accordingly. As such, the Investment Shares are now currently held by Wanger as trustee of the Diaz Trust.

**Cohen's Allegations and Concerns**

38    Other than his assertion of ownership of the Management Shares, the correspondence from Cohen to the Liquidators or which he has copied to the Liquidators raises numerous concerns. These are extremely wide-ranging but to the extent that they appear to relate (to a greater or lesser degree) to the matters subject to this application, they can be summarized as follows, each by reference to the letter or telephone conversation in which they were raised:-

Letter, 21 August 2002 (pages 38 to 40)

39    That the "Bermuda accountants/trustees" and Chris Wetherhill (a director and the secretary of the Fund) withdrew co-operation, fired Cohen as advisor to the Fund, and voted to liquidate it and the "management company" (which I understand to mean Gazelle Bermuda).

40    That the "Bermuda directors" (which I understand to be a reference to the Fund's Bermuda based directors) are destroying Cohen's business, and that the "Bermuda Trustees" have cut him off from the money from the "Trust" (which I understand to mean

10

the Diaz Trust). Cohen also alleges willful breach of trust and possible corruption on the part of the "Trustee" (which I understand to be a reference to Mercotrust).

41     That if money is sent to Liechtenstein (by which I understand him to mean to the Diaz Trust) it will be misappropriated.

42     That Cohen was arrested in Liechtenstein whilst trying to file a police report.

Conversation between Ross Harris and Jonathan Howes of Continental, 16 April 2004 (page 41)

43     In which Jonathan Howes reported Cohen's concerns that the assets of the Fund might be misappropriated before being transferred to the Diaz Trust.

Conversation between Ross Harris and Cohen, 8 June 2004 (page 42)

44     In which Cohen stated his belief that there was a fraud perpetrated by the accountant of the trust in Liechtenstein (which I understand to mean, at that time, Mercotrust) and that no money should be paid to Mercotrust, and that he and his sister were not in good health and were in need of the monies from the Fund to pay for medical treatments they were having.

Conversation between Ross Harris and Cohen, 25 January 2005 (page 43)

45     In which Cohen explained that he was homeless and had no money with which to live, and requested the release of US$50,000 to Wanger from the Fund.

46     Following that conversation the Liquidators wrote to Messrs Arthur Morris and Dudley Cottingham of Continental on 2 February 2005 to enquire whether they have any information which would shed light on the various outstanding issues raised by Cohen (pages 44 to 46). The Liquidators did not receive a specific response to those enquiries although I have subsequently spoken to Dudley Cottingham in connection with Cohen's claim to be a creditor of the Fund.

Email of 9 March 2005 from Cohen to Ross Harris, page 47

47     In which Cohen asserts that:

BDM/613598/1495273/v4

11

47.1    Mr Edmund Frick ("Frick"), an employee of Mercotrust, made himself protector of Cohen's sister's trust behind Cohen's back;

47.2    Frick threatened to kill Cohen;

47.3    Frick had stopped sending accounts of the Diaz Trust to Cohen;

47.4    No distribution had been made to the beneficiaries of the Diaz Trust of the funds distributed to Mercotrust by the Liquidators and that money had been stolen;

47.5    A fraud attempted on Cohen by a Jose Manuel Vazquez and a Miles Howarth had been stopped by the FBI in Los Angeles;

47.6    An attempt had been made to poison Cohen before a hearing in the Princely Court in Vaduz;

47.7    Wanger had gone back on his word on three counts by not appointing Feierabend as protector, by refusing to distribute $10,000 to Cohen and by reneging on a promise to honour the wishes of the "Settlor" (presumably of the Diaz Trust);

47.8    Wanger had cancelled a proposed meeting with Cohen; and

47.9    Wanger had emptied the Diaz Trust's bank account by charging excessive fees.

48    In his email of 9 March 2005, Cohen included a link to a website, http://hometown.aol.com/seekinglawfirm, in connection with the assertion that Frick had tried to kill him. At pages 48 to 49 is a copy of a printout of the full content of the pages accessed by that link. The website describes Cohen's detention in a psychiatric clinic in Switzerland and his apparent arrest and detention in Liechtenstein.

Conversation between Ross Harris and Cohen, 1 April 2005 (page 50)

49    In which Cohen repeated that Wanger had not appointed Feierabend as protector in Liechtenstein and that, therefore, no money should be paid to Wanger.

BDM/613598/1495273/v4

55

12

50    Cohen also explained that he had nowhere to live which was hampering his ability to appear before an immigration court in the U.S.

**Other Correspondence from Cohen and Cohen's Health**

51    During the course of the liquidation, Cohen has corresponded with the Liquidators, and copied correspondence of his with third parties to the Liquidators, on numerous occasions. Copies of that correspondence are to be found at pages 51 to 64 and give some indication of the personal difficulties currently faced by Cohen which I have already described above.

**Subsequent Events**

52    On 22 September 2005 the Liquidators were contacted by Dudley Cottingham of Continental who expressed Cohen's urgent need for cash to assist Cohen with legal matters in the United States of America. Cottingham explained that Cohen is being held in Fairfax County, Virginia with a pending criminal charge for possession of a prohibited substance and was in urgent need of funds in order to make bail and hire a lawyer to defend his case.

53    On 23 September 2005 the Liquidators made an interim distribution of US$8,000 to Cohen's U.S. lawyers, Jay B. Myerson Law Offices ("Myerson") on behalf of Cohen to allow Myerson to represent Cohen. The distribution was made directly to Cohen and not through Wanger due to:

    53.1    Cohen's urgent need of funds;

    53.2    The undisputed evidence that Cohen is a major beneficiary of the Fund through the Diaz Trust; and

    53.3    The relative small amount transferred in relation to the overall assets of the Fund.

54    On 29 September 2005 a proposal (a copy of which is attached marked "NF-8") was put forward by the Liquidators to Wanger, Cohen, Feierabend, and Cottingham for suggested methods to make a further more substantial interim distribution in light of Cohen's urgent

56

13

need for funds prior to his court hearings and suggested methods to make a final distribution to allow the Liquidators to finalise the liquidation. A summary of the proposals addressed by the Liquidators are as follows:

54.1    Proposal 1 - The Liquidators make an interim distribution of US$60,000 (inclusive of the US$8,000 already distributed) to Cohen and US$150,000 to Wanger without making an application to Court for directions provided they receive the appropriate consents, releases and indemnifications from Wanger and Cohen. The final distribution to be made after the appropriate consents, releases and indemnifications are received from Cohen and other relevant parties, or failing that, the Liquidators seek directions from the Court.

54.2    Proposal 2 - Appointment of new trustee, due to correspondence received by the Liquidators indicating that Cohen lacked confidence in Wanger, and an interim and final distribution made directly to the new trustee without the need to make an application to Court for directions provided the Liquidators receive the appropriate consents, releases and indemnifications from Cohen and other relevant parties.

54.3    Proposal 3 - The Liquidators make an interim and final distribution directly to the beneficiaries and/ or the entity(s) nominated by them. Again, the Liquidators would require the appropriate consents, releases and indemnifications from Cohen, Wanger and other relevant parties.

54.4    Proposal 4 - As requested by Cohen, the Liquidators make an application to Court to have the Fund removed from liquidation and return the Fund to the directors.

55    The only response received by the Liquidators to their proposals was from Cohen. Cohen initially requested the Liquidators adopt Proposal 4 and apply to the Court for the Fund to be removed from liquidation. This proposal had not been recommended by the Liquidators for reasons set out in their proposal (please refer to "NF-8"). Subsequently, Cohen requested the Liquidators adopt Proposal 3, however, no response or appropriate

14

consents, releases and indemnifications were received from Wanger and other relevant parties to allow the Liquidators to adopt any of these proposals.

56    Subsequent to the initial distribution of US$8,000, Cohen and Myerson advised that to allow Cohen to post bail and fund his legal defense, Cohen required a further US$52,000. Based on the circumstances outlined at paragraph 53 above and the lack of response from Wanger with respect to the proposals, the Liquidators decided to distribute the additional US$52,000 on a humanitarian basis to assist Cohen with his pending US Court matters. Therefore, on 6 October 2005 and 19 October 2005 an additional US$25,000.00 and US$27,000 respectively was distributed to Myerson for the benefit of Cohen. Combined with the US$8,000 distributed on 23 September 2005, a total of US$60,000 has been distributed to Cohen this year.

57    Subsequently, in late November and early December, the Liquidators (and their attorneys) were contacted by Schroter and by Cottingham, who have confirmed their support for Cohen's proposal that the Fund be taken out of liquidation and returned to active management under the control of Cohen. The Liquidators' attorneys have explained to Schroter and Cottingham that it is not possible for a Cayman Islands company to be taken out of liquidation. Schroter and Cottingham have therefore indicated that they may wish to challenge the validity of the appointment of the Liquidators. However they have suggested that a distribution by the Liquidators from the Fund would be necessary to enable them to fund such a challenge, and the Liquidators are unwilling to make further distributions from the Fund until such time as the question of the validity of their appointment and the identity of the persons entitled to such distributions is resolved pursuant to the application supported by this Affidavit.

**Claim by Miles Howarth**

58    The Liquidators have also received correspondence from a Mr Miles Howarth (previously referred to in paragraph 47.5 above) in which Mr Howarth claims an interest over assets of the Fund. A copy of that correspondence, including the Liquidators' responses to Mr Howarth, is at pages 65 to 77. I refer to this correspondence in this Affidavit only for the sake of completeness, as the Liquidators reject Mr Howarth's claim

BDM/613598/1495273/v4

58

# EXHIBIT 1

40

Case No. 1:08-cv-02806-ZLW    Document 3    filed 12/29/08    USDC Colorado    pg 111
Dow Jones Interactive® Publications Library    of 129

Page 1 of 1



# DOW JONES NEWSWIRES℠

*Article 2 of 2*
**Hedge Funds/S&P/DJIA -2: Gazelle Global Fund Tops Chart**

01/27/1996
Dow Jones International News
(Copyright (c) 1996, Dow Jones & Company, Inc.)

Even George Soros, the first practitioner of macro investing, told his investors in June that disappointing returns had led him to reconsider the strategy.

Self-reflection apparently worked for Soros. The seven funds in Soros Fund Management, whose collective $15 billion in assets accounts for about one-sixth of all hedge-fund assets, each turned in positive results.

Flagship Quantum Fund, with $5.3 billion under management, gained 38.9% for the year.

And its Quota Fund topped the list of the approximately 80 funds-of-funds tracked by Managed Account Reports. The $1.3 billion fund gained 160.1%, after fees and adding back distributions it paid out in 1995.

**Gazelle Global Fund** , an offshore fund advised by Solomon Cohen of CK Partners in New York, topped the performance chart in 1995, with a vertigo-inducing 300.6% gain. People familiar with his record say he made 184% in November alone.

Despite 'global' in its name, Gazelle is categorized as an event-driven fund, one that invests in anticipation of an event such as a takeover or emergence from bankruptcy. Cohen has told others that his strategy involves prudent use of derivatives. He has a reputation for carrying British reserve to an extreme, and did not return phone calls.

One of the year's surprising disappointments among event-driven funds managers was Mark Dickstein, a 37-year old former commodities floor trader who had a nine-year record of generating gross returns of 50% or more annually.

(MORE) AP-DOW JONES NEWS 27-01-96

0826GMT

---

**Return to Headlines**

Copyright © 2000 Dow Jones & Company, Inc. All Rights Reserved.

Home  Help  Feedback  Pricing



# EXIHIBIT 2

Investigative Report DA Case #2007-07-130                                        Page 4



## ADDITIONAL DATA

Records checks indicate that a person named Solomon Ben-Tov Cohen (DOB: 12/24/1960) is an alien registered under the alien registry number A77309675 and has an FBI number of 83165NB4.

In the voice mail and in the other documents related to this case the person calling himself Solomon Cohen provides a cellular phone number of (303) 641-9207. This is a Sprint PCS prefix. Attempts to date of contacting this number result in reaching the automated voice mail message system assigned to the number.

Not true

Cohen indicates that he is staying at the Grand Hyatt in Denver, CO. According to the Grand Hyatt security staff no one with that name, variation of the name or description has stayed or is staying at the hotel.

Two other names and addresses that are mentioned in documents sent to the law firm are "Sean" at 1424 Elizabeth St., Denver, CO and Brian Tielker at 720 16th St. #416, Denver, CO 80202. Neither of these individuals has been contacted at this time.

Keli Hynes said that I should speak with an attorney with their firm, William "Bill" Blum. He was at the firm's New York, NY office at the time. I interviewed Blum over the telephone. He stated that in 2004 an associate of his, Dr. Markus Wanger, in Lichtenstein contacted Blum regarding the use of Blum's office for a meeting with a client of Wanger's, Solomon Cohen. Prior to the arranged meeting at Blum's office between Wanger and Cohen, Cohen sent documents to Blum's office. Blum read the documents and concluded that Cohen may be mentally unstable. Blum contacted Wanger and asked that he not use his office for the meeting with Cohen because he was uncomfortable with what he knew of Cohen. Blum said that was the last information he had regarding Cohen until the letter at his Denver office on July 9, 2007. Blum contacted Wanger and asked if he still had a relationship with Cohen. Wanger responded back and said that Cohen was strange and he is claiming to be a beneficiary in a trust called Corinne Diaz Trust.

Regarding the Corinne Diaz Trust, in some of Cohen's correspondence with the Solomon Pearl Blum Heymann & Stich LLP law firm he makes reference to requesting assistance in claiming part or all of the Corinne Diaz Trust that he believes he is entitled to.

## PERSONAL AND CRIMINAL HISTORY

Solomon Ben-Tov Cohen has criminal records in California, Florida, Utah and Virginia. According the Immigration and Customs Enforcement this person has a Warrant for Alien Arrest maintained in his A file. Charges in his criminal history are for possession of a controlled substance and felony fleeing. The earliest record of Cohen in the United States is in 2000 by Immigration and Naturalization Service for entry of an alien at improper time/place."

41

*falsified evidence*          *perjury*          *Financial Gain law*

## DISTRICT ATTORNEY - SECOND JUDICIAL DISTRICT
201 W. Colfax Ave., Dept. 801, Denver, Colorado 80202

| | | |
|---|---|---|
| 1. | **INVESTIGATIVE REPORT:** | DA Case #2007-07-130<br>July 19, 2007 |
| 2. | **INVESTIGATOR:** | United States Postal Inspector Steve Hodges<br>Kent Prose |
| 3. | **VIOLATOR:** | Solomon Ben-Tov Cohen |
| 4. | **STATUTE VIOLATED:** | POSSESSION OF A CONTROLLED SUBSTANCE - SCHEDULE II - 1 GRAM OR LESS, 18-18-405(1),(2.3)(a)(I) C.R.S. (F6) <82011><br><br>RECKLESS ENDAGERMENT, 18-3-208 (M3) <02071> |
| 5. | **OFFENSE DATES:** | Between and Including July 5, 2007 and July 9, 2007 |
| 6. | **PLACE OF OFFENSE:** | 1801 Broadway, Suite 500<br>Denver, CO 80202 |
| 7. | **MONEY VALUE INVOLVED:** | $0 |
| 8. | **VICTIMS:** | State of Colorado<br>Keli Hynes<br>Marta Strzeszewski<br>Laura Parke |

9. **SYNOPSIS:**

Between and including July 5, 2007 and July 9, 2007, Solomon Bent-Tov Cohen caused to be mailed a First Class letter to a private business in Denver, CO. The letter contained a written message signed by Solomon Ben-Tov Cohen and a light colored powder like substance. The mailing caused the employees of the private business alarm and fear for their safety. An employee of the private business reported the matter to authorities via an emergency 911 call. Emergency services, police and fire services responded. The fire service hazardous materials unit field screened the light colored powder like substance positive for methamphetamine.

42

Investigative Report DA Case #2007-07-130                                    Page 2

## 10.    **DETAILS OF OFFENSE**:

Your affiant, Kent E. Prose, an investigator for the Denver District Attorney's Office, Economic Crime Unit, was assigned to investigate allegations of Possession of a Controlled Substance (Methamphetamine) and Reckless Endangerment by Solomon Ben-Tov Cohen at 1801 Broadway, suite 500, in the City and County of Denver, Colorado. Your affiant assisted United States Postal Inspector Steve Hodges, who initiated the investigation. Your affiant reviewed reports from Inspector Hodges, as well as documents obtained in the course of the investigation. Postal Inspector Hodges reported the following information to your affiant.

"The basis for this investigation was information received by the U.S. Postal Inspection Service regarding a suspicious letter that had been received by the private law firm of Solomon Pearl Blum Heymann & Stich LLP located in Denver, CO.

On July 9, 2007, I received a telephone call from the Denver Police Department dispatch center regarding a suspicious letter containing an unknown powder like substance that had been received by a private law firm in Denver, CO. Denver Police dispatch advised me that police and fire-hazardous materials units were on the scene of the incident. I responded to the location to initiate an investigation into the matter.

Upon arrival I met with Denver Fire Department officer Butch Hoss outside 1801 Broadway. He briefed me on the status of the call. Hoss said that a hazardous materials survey team was assessing the unknown powder like substance found in the letter in question. He also said that no one related to the suspicious letter had complained of any physical illness that may have been related to the unknown powder like substance. Within thirty minutes the Denver Fire Department hazardous materials team reported that the unknown substance had field screened positive for methamphetamine. Hoss told me that he will clear the scene once I take custody of the letter and contents.

I entered the building at 1801 Broadway and went to suite 500, the private law firm of Solomon Pearl Blum Heymann & Stich LLP. I met Denver Fire Department hazardous materials unit members Jim Leo and Sean Armstrong. They briefed me on their hazardous materials assessment and directed me to the office where the letter and contents remained.

I photographed the envelope, letter and powder like substance as I found them in the office. I held these items as evidence. U.S. Postal Inspectors R. Barnett and J. Fuller arrived on scene and assisted me in the investigation.

Inspector Fuller interviewed receptionist Keli Hynes (DOB: 06/23/1966). Hynes stated that she believed she knew who may be responsible for the mailing. Hynes began by saying that the law firm's Denver office had received a couple of faxes over the last few weeks from a man identifying himself as Solomon Cohen. She said that this man also showed up at the Denver office to hand deliver a message.

Investigative Report DA Case #2007-07-130                                          Page 3

I asked Hynes to tell me what happened today regarding the letter the office received with the powder like substance in it. Hynes said that after the mail was delivered to the office she began to open what the office received. Among the other mail she noticed a business size letter that had a handwritten address. She took it to another employee, Marta Strzeszewski, to show it to her. Hynes commented that it looked like the same handwriting as the previous faxes. As Hynes opened the letter she saw the powder inside and set it down on a desk. Strzeszewski called 911.

I asked Hynes to tell me about the faxes that her office had received that she thought were related to the letter in question. Hynes said that sometime in late June 2007 her office received a fax that was a printed copy of a page from the law firm's web site of attorney Bruce E. Rohde's biography. On that page was a handwritten message. The handwritten portion asked how the person could receive meth in return for something like evidence about poison. Hynes said it was very strange. The fax was signed Solomon B. Cohen. Hynes provided a copy of the fax. The fax header indicated that it was sent from 3036231138, Kinko's LoDo on 6/26/07 at 19:04 hours. Later in the course of this investigation I reviewed surveillance video from the Kinko's LoDo store in Denver, CO in an effort to identify the person that sent this fax. I found the person that would have been responsible for sending the fax by correlating the fax header time and date with the surveillance system time and date and the sending fax machine time and date. The person shown on the surveillance video matches the appearance of the photograph of Solomon Ben-Tov Cohen with an alien registration number A77309675. Also, in one portion of the store video surveillance a page that had been sent on the fax had matching unique graphic features of the fax received by the law firm.

Hynes supplied me with a letter that a man identifying himself as Solomon Cohen had delivered to the law firm's Denver office. The letter is dated June 28, 2007 and signed, "Solomon Ben-Tov COHEN MA (cantab) DOB 12/24/1960". Hynes provided me the original letter but only a copy of the envelope it was enclosed in originally.

Hynes said her office received another fax on July 2, 2007 that indicated it was from "Solomon B Cohen MA (Cantab)". The fax consisted of two pages. The message was addressed to "Mr. Rodhe", an attorney in the law firm. The message was, "Dear Mr Rodhe, Please don't do anything re: above. Sincerely, Solomon B Cohen MA (Cantab)". Hynes provided me with a copy of this two page fax.

Hynes said another fax was received by her office on July 6, 2007. Again, the fax was two pages and signed "Solomon B COHEN MA (Cantab)". This fax consisted of a short message on the fax cover sheet followed by a full page letter. In the full page letter one of the paragraphs reads, "Secure a claim for damages of $1Million (I am sending your firm the poison he had me take.) on his apartment 720 16th St #416 Denver Co 80202." The context of the letter indicates that "the poison" may be crystal meth.

Hynes also said that a person identifying himself as Solomon Cohen left a voice message on the office answering system on July 5, 2007 at approximately 1:20 p.m... Hynes allowed me to listen and make an audio recording of the message.

# EXIHIBIT 3

# EXIHIBIT 11

Page 2 of 3

MITCHELL R. MORRISSEY, District Attorney for the Second Judicial District, of the State of Colorado, in the name and by the authority of the People of the State of Colorado, informs the Court of the following offenses committed, or triable, in the County of Denver:

## COUNT ONE: POSSESSION OF A CONTROLLED SUBSTANCE - SCHEDULE II - 1 GRAM OR LESS (F6) <82011>

Between and including **July 5, 2007, and July 9, 2007, SOLOMON COHEN** unlawfully, feloniously, and knowingly possessed one gram or less of a material, compound, mixture, or preparation that contained **METHAMPHETAMINE**; a schedule II controlled substance; in violation of section 18-18-405(1),(2.3)(a)(I), C.R.S.

## COUNT TWO: RECKLESS ENDANGERMENT (M3) <02071>

Between and including **July 5, 2007, and July 9, 2007, SOLOMON COHEN** unlawfully and recklessly engaged in conduct which created a substantial risk of serious bodily injury to **KELI HYNES, MARTA STRZESZEWSKI, AND LAURA PARKE**; in violation of section 18-3-208, C.R.S.

All offenses against the peace and dignity of the People of the State of Colorado.

## WITNESS LIST

Keli Hynes (victim)
Marta Strzeszewski (victim)
Laura Parke (victim)
Solomon Pearl Blum Heymann & Stich LLP
1801 Broadway #500
Denver, CO 80202
303-937-7838

William Blum
Solomon Pearl Blum Heymann & Stich LLP
40 Wall St., 35th Fl
New York, NY 10005
202-267-7600

Sheila Hoffarth
FedEx Kinko's LoDo
1509 Blake St.
Denver, CO 80202
303-623-3500

Jim Leo
Sean Armstrong
Denver Fire Department-HazMat
745 W. Colfax
Denver, CO 80204
720-913-3473

Robert Barnett,
John E. "Brook" Fuller
Steve Hodges
U.S. Postal Inspectors
1745 Stout St., Ste 900
Denver, CO 80299
303-313-5355

Officer E. Quintana # 01052
Denver Police Department
1331 Cherokee
Denver, CO 80202
720-913-2800

96

# EXIHIBIT 12

Subj:   **Gazelle Global Fund - Wednesday Hearing**
Date:   4/25/2006 4:02:59 P.M. Eastern Standard Time
From:   david.walker@ky.pwc.com
To:     Cohensb1@aol.com
CC:     nick.freeland@ky.pwc.com, Ben.Mays@MAPLE

Dear Solomon

I advise that the Liquidators are returning to Court tomorrow
that you have not been able to procure proper legal represen
Cayman Islands, and accordingly, it does not appear that the
the Chief Justice on 8 March 2006 can be fully achieved in it:
form. The Liquidators are therefore seeking further direction:
to proceed. I attach a copy of the Application below.

I understand that Chris Russell from Ogier will be present at
and is fully aware of the application being made.


(See attached file: Scan001.PDF)


Yours faithfully


David A. K. Walker
For & behalf of
J I Nicholas Freeland
Joint Liquidator
Gazelle Global Fund Limited (In Voluntary Liquidation)



The information transmitted is intended only for the person

# EXIHIBIT 13



**Direct line:**    **(345) 914 1685**
**Direct Email:**    **Chris.Russell@ogier.com**
**Our Reference:**    **CR/BLJ**

Friday, 26th October 2007

Solomon Cohen
P.O. Box 1108
Denver
CO80201-1108
U.S.A.

Dear Solomon,

Thank you for your letter. I am sorry to hear of your present condition. As I have previously explained, my Cayman Court Guardianship for you has been discharged, and I am afraid there is nothing which I am able to do to assist you. I have forwarded your letter to Stuart Diamond of Diamond Law Associates, who, so far as I am aware, are still the Cayman Attorneys for Dr. Wanger. Could I suggest that you address any further correspondence to them; I think you have their address, telephone and email contact numbers, but I set them out below:-

        Stuart Diamond
        Diamond Law Associates
        P.O. Box 2887
        George Town
        Grand Cayman, KY1-1112
        CAYMAN ISLANDS

        Phone: +1-345-769-9352
        Fax: +1-345-769-4352

        info@dla.ky

Yours sincerely,

**Christopher Russell**
**Senior Counsel**

Ogier

Queensgate House
PO Box 1234
Grand Cayman KY1-1108
Cayman Islands

Tel +1 345 949 9876
Fax +1 345 949 9877

www.ogier.com

A list of Partners may be
inspected on our website

GCM_LIT-827890-1

British Virgin Islands • Cayman Islands • Guernsey • Hong Kong • Ireland • Jersey • London • Montevideo • New Zealand

98

# EXIHIBIT 14



Produced by Concorde Printers Ltd, Corby, England, 0536 401144

U.S. IMMIGRATION
NEW YORK, N.Y. 8601

JUN 25 1996

ADMITTED
UNTIL

U.S. IMMIGRATION 44

NOV 21 1996

ADMITTED
UNTIL

BERMUDA IMMIGRATION
A D M I T T E D
64  NOV 18 1996  64

IMMIGRATION

10 1995

UNITED STATES
OF AMERICA          VISA

Issuing Post Name
LONDON

Control Number
1995087404001

Surname
COHEN

Visa Type/Class
R    H1B

Given Name
SOLOMON, BEN TOV

Sex
M

Birth Date
24DEC1960

Nationality
GRBR

Passport Number
500031548

Issue Date
29MAR1995

Expiry Date
21DEC1997

Entries
M.,

Annotation

03089035

PET. NAME C K PARTNERS
PET. DATA EAC9502350  PET. EXP. DATE 21DEC1997

VNGBRCOHEN<<SOLOMON<BEN<TOV<<<<<<<<<<<<<<<
5000315480GBR6012247M9503294H8103E625F7680F3

99



Departure Number

37519379 05

Immigration and
Naturalization Service

I-94
Departure Record

U.S. IMMIGRATION
NEW YORK, N.Y. 2518

OCT 30 1997

(CLASS)
H1B

ADMITTED
UNTIL  Dec. 31, 1997

16. Birth Date (Day/Mo/Yr)
24.12.60

14. Family Name
GREEN

15. First (Given) Name
SOLOMON

17. County of Citizenship
UNITED KINGDOM

STAPLE HERE

See Other Side

STAPLE HERE

100

Immigration and Naturalization Service

**Notice of Action**

## THE UNITED STATES OF AMERICA

| RECEIPT NUMBER | | | I-129 |
|---|---|---|---|
| EAC-95-023-50155 | | PETITION FOR A NONIMMIGRANT WORKER | |

| RECEIPT DATE | PRIORITY DATE | PETITIONER |
|---|---|---|
| November 3, 1994 | | C K PARTNERS |

| NOTICE DATE | PAGE | BENEFICIARY |
|---|---|---|
| December 21, 1994 | 1 of 1 | COHEN, SOLOMON |

C K PARTNERS
C/O RICHARD A NEWMAN
122 EAST 42ND STREET SUITE 810
NEW YORK NY 10168

Notice Type: Approval Notice
Class: H1B
Valid from 12/21/94 to 12/21/97

Courtesy Copy: Original sent to: NEWMAN, RICHARD A

This courtesy notice is to advise you of action taken on this case. The official notice has been mailed to the attorney or representative indicated above. Any relevant documentation included in the notice was also mailed as part of the official notice.

The above petition and change of status have been approved. The status of the named foreign worker(s) in this classification is valid as indicated above. The foreign worker(s) can work for the petitioner, but only as detailed in the petition and for the period authorized. Any change in employment requires a new petition. Since this employment authorization stems from the filing of this petition, separate employment authorization documentation is not required. Please contact the IRS with any questions about tax withholding.

The petitioner should keep the upper portion of this notice. The lower portion should be given to the worker. He or she should keep the right part with his or her Form I-94, *Arrival-Departure Record*. This should be turned in with the I-94 when departing the U.S. The left part is for his or her records. A person granted a change of status who leaves the U.S. must normally obtain a visa in the new classification before returning. The left part can be used in applying for the new visa. If a visa is not required, he or she should present it, along with any other required documentation, when applying for reentry in this new classification at a port of entry or pre-flight inspection station. The petitioner may also file Form I-824, *Application for Action on an Approved Application or Petition*, with this office to request that we notify a consulate, port of entry, or pre-flight inspection office of this approval.

This courtesy copy may not be used in lieu of official notification to demonstrate the filing or processing action taken on this case.

THIS FORM IS NOT A VISA NOR MAY IT BE USED IN PLACE OF A VISA.

Please see the additional information on the back. You will be notified separately about any other cases you filed.
IMMIGRATION & NATURALIZATION SERVICE
EASTERN SERVICE CENTER
75 LOWER WELDEN STREET
SAINT ALBANS VT 05479-0001
Customer Service Telephone: (802) 527-3160



101

Immigration and Naturalization Service    Notice of Action

# THE UNITED STATES OF AMERICA

| RECEIPT NUMBER EAC-98-052-50844 | | CASE TYPE I129 PETITION FOR A NONIMMIGRANT WORKER | |
|---|---|---|---|
| RECEIPT DATE December 12, 1997 | PRIORITY DATE | PETITIONER CK PARTNERS | |
| NOTICE DATE December 22, 1997 | PAGE 1 of 1 | BENEFICIARY COHEN, SOLOMON B. | |

| CK PARTNERS C/O RICHARD A NEWMAN ESQ 122 E 42ND ST SUITE 810 NEW YORK NY 10168 | Notice Type: Approval Notice Class: H1B1 Valid from 12/22/97 to 12/21/00 |
|---|---|

Courtesy Copy: Original sent to: NEWMAN, RICHARD A

This courtesy notice is to advise you of action taken on this case. The official notice has been mailed to the attorney or representative indicated above. Any relevant documentation included in the notice was also mailed as part of the official notice.

The above petition and extension of stay have been approved. The status of the named foreign worker(s) in this classification is valid as indicated above. The foreign worker(s) can work for the petitioner, but only as detailed in the petition and for the period authorized. Any change in employment requires a new petition. Since this employment authorization stems from the filing of this petition, separate employment authorization documentation is not required. Please contact the IRS with any questions about tax withholding.

The petitioner should keep the upper portion of this notice; the lower portion should be given to the worker. He or she should keep the right part with his or her Form I-94, Arrival-Departure Record. This should be turned in with the I-94 when departing the U.S. The left part is for his or her records. A person granted an extension of stay who leaves the U.S. must normally obtain a new visa before returning. The left part can be used in applying for the new visa. If a visa is not required, he or she should present it, along with any other required documentation, when applying for reentry in this new classification at a port of entry or pre-flight inspection station. The petitioner may also file Form I-824, *Application for Action on an Approved Application or Petition*, with this office to request that we notify a consulate, port of entry, or pre-flight inspection office of this approval.

This courtesy copy may not be used in lieu of official notification to demonstrate the filing or processing action taken on this case.

THIS FORM IS NOT A VISA NOR MAY IT BE USED IN PLACE OF A VISA.

Please see the additional information on the back. You will be notified separately about any other cases you filed. IMMIGRATION & NATURALIZATION SERVICE VERMONT SERVICE CENTER 75 LOWER WELDEN STREET SAINT ALBANS VT 05479-0001 Customer Service Telephone: (802) 527-3160



Form I-797C (Rev. 09/07/93)N

192

# EXIHIBIT 15